**GULF OIL CORPORATION**

v.

**William BROCK, United States Secretary of Labor, et al., Appellants.**

**No. 80–1127.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 9, 1985.

Decided Dec. 13, 1985.

---

Peter R. Maier, Atty., Dept. of Justice, with whom Richard K. Willard, Acting Asst. Atty. Gen., Dept. of Justice, Joseph E. diGenova, U.S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D.C., were on brief, for appellants. Douglas N. Letter, Atty., Dept. of Justice, Washington, D.C., also entered an appearance for appellants.

Burt A. Braverman, with whom Susan Paradise Baxter, Washington, D.C., and William G. Duck, Houston, Tex., were on brief, for appellee.

Before WALD, EDWARDS and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.

Circuit Judge STARR concurs in Parts I., II.B. and II.C. of the opinion for the court, and in the judgment reversing the District Court.

HARRY T. EDWARDS, Circuit Judge.

This case is a reverse Freedom of Information Act ("FOIA") action brought by Gulf Oil Corporation ("Gulf") to enjoin the Department of Labor ("DOL") from disclosing the 1973 affirmative action plan for Gulf's Houston Headquarters, which had been requested by the Houston Chapter of the National Organization for Women ("NOW"). Although the NOW FOIA request related only to Gulf's 1973 affirmative action plan, and Gulf's complaint did not challenge the legality of the DOL regulations governing the disclosure of affirmative action plans, the District Court nevertheless enjoined disclosure of the 1973 plan and, in addition, all "substantially similar" documents. The Government appealed. In 1984, after waiting more than eleven years due to litigation delays, NOW withdrew its request for the 1973 Headquarters plan. This court then dismissed as moot the portion of the appeal pertaining to the order that enjoined public disclosure of Gulf's 1973 Houston Headquarters affirmative action plan. We now dismiss the rest of the appeal concerning "substantially similar" documents and remand with instructions to the District Court to vacate the injunction against DOL.

I. BACKGROUND

A. *The Regulatory Framework*

Gulf is a government contractor subject to Executive Order 11246,[1] which requires it to comply with government regulations designed to ensure that its workforce is free from discrimination based on race, sex, religion or national origin. The DOL's

---

1. 30 Fed.Reg. 12,319 (1965), *as amended, re-* *printed after* 42 U.S.C. § 2000e (1982).

Office of Federal Contract Compliance Programs ("OFCCP") bears the responsibility for administering this program.[2] Under OFCCP rules, nonexempt government contractors must file annual EEO-1 Reports detailing the number of women and minority group members employed in specified job categories.[3] They must also prepare affirmative action plans that compare their employment of women and minorities with workforce availability and set goals and timetables to correct deficiencies.[4] Contractors are required to file an affirmative action plan whenever OFCCP conducts a periodic compliance review.[5]

Plans submitted by contractors become "agency records" within the meaning of FOIA, which establishes a statutory presumption that such records will be disclosed, on request, unless they fall into one of nine categories of exemptions from mandatory disclosure.[6] If an agency falls within an exemption, disclosure of the information is left to the agency's discretion.[7]

DOL regulations that govern the availability of records submitted under Executive Order 11246 tend to favor disclosure.[8] The OFCCP is instructed to release such information, on request, notwithstanding the applicability of a FOIA exemption, if disclosure will further the public interest and will not impede the agency's functions, *unless* such disclosure is prohibited by law.[9] However, if the preconditions for release are not met, OFCCP is instructed to withhold portions of affirmative action plans, such as goals and timetables, that are found to be confidential commercial or financial information "because they indicate, and only to the extent that they indicate, that a contractor plans major shifts or changes in his personnel requirements and he has not made this information available to the public."[10] In addition, OFCCP is instructed to withhold information from the plans on staffing patterns and pay scales, if release would "injure the business or financial position of the contractor, would constitute a release of confidential financial information of an employee or would constitute an unwarranted invasion of the privacy of an employee."[11]

While FOIA and the DOL regulations generally militate in favor of disclosures, the Trade Secrets Act[12] prohibits certain disclosures by officers or employees of the government. However, the prohibitions of the Trade Secrets Act are limited to disclosures "not authorized by law." Initially, DOL took the position that its regulations authorized disclosures "by law" and, therefore, assumed that none of its disclosures were prohibited by the Trade Secrets Act. In 1979, the Supreme Court rejected this position. In *Chrysler Corp. v. Brown*,[13] the Court held that DOL does not have

---

**2.** 41 C.F.R. § 60-1.2 (1985). At the time this suit was brought, the Department of the Interior served as Gulf's compliance agency. In 1978, this authority was consolidated in OFCCP. *See* Exec. Order No. 12086, 43 Fed.Reg. 46,501 (1978), *reprinted after* 42 U.S.C. § 2000e (1982).

**3.** 41 C.F.R. § 60-1.7 (1985).

**4.** *Id.* § 60-1.40 & pt. 60-2.

**5.** *Id.* § 60-60.3(b).

**6.** 5 U.S.C. § 552 (1982). The exemptions of concern in this case are FOIA exemptions 3 and 4, which provide that the mandatory disclosure provisions do not apply to matters that are: (3) specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld; (4) trade secrets and commercial or financial information obtained from a person and privileged or confidential; 5 U.S.C. § 552(b)(3), (4) (1982).

**7.** *Chrysler Corp. v. Brown*, 441 U.S. 281, 294, 99 S.Ct. 1705, 1713, 60 L.Ed.2d 208 (1979).

**8.** 41 C.F.R. pt. 60-40 (1985).

**9.** *Id.* § 60-40.2.

**10.** *Id.* § 60-40.3(a)(1).

**11.** *Id.* § 60-40.3(a)(2).

**12.** 18 U.S.C. § 1905 (1982).

**13.** 441 U.S. 281, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979).

authority to limit the scope of the Trade Secrets Act and, in addition, that the regulations were not promulgated pursuant to the procedures required for the enactment of substantive rules. Thus, the Court held that the regulations do not carry the "force and effect of law." [14] As a result of the *Chrysler* decision, DOL must now determine whether a contemplated disclosure falls within the protective cover of the Trade Secrets Act.[15] Information that was formerly disclosable under department regulations must now be withheld if subject to the prohibitions of the Trade Secrets Act.

### B. *Procedural History*

In 1973, Gulf submitted an affirmative action plan for its Houston Headquarters in connection with a compliance review of its affirmative action program. In April, 1973, NOW filed a FOIA request for this plan. Under its normal procedures, DOL notified Gulf of this request on May 30, 1973. Gulf lodged a formal protest, arguing that the plan contained confidential business information and should be exempt from public disclosure. On December 26, 1973, DOL notified Gulf that it intended to disclose the requested document. Gulf filed a reverse-FOIA action in federal district court for the District of Colorado. Although Gulf sought to enjoin DOL from disclosing any affirmative action plans, EEO–1 Reports or other documents submitted by Gulf in the past or the future, the complaint did *not* challenge the legality of department regulations governing the availability of records submitted under Executive Order 11246.

The adjudication was repeatedly postponed. It was first delayed pending the decision in *Sears Roebuck & Co. v. General Services Administration*,[16] and then, in August, 1975, the Colorado court transferred the case to the United States District Court for the District of Columbia. In September, 1976, the Government filed a motion to dismiss Gulf's action or, in the alternative, for summary judgment. In July, 1977, Gulf also filed for summary judgment. The District Court held these proceedings in abeyance pending the Supreme Court's ruling on the viability of reverse-FOIA actions in *Chrysler Corp. v. Brown, supra.*

Following the decision in *Chrysler*, DOL asked the District Court to remand the case to the agency for further administrative proceedings in light of *Chrysler*. The District Court denied the Government's motion and issued an order granting summary judgment for Gulf on the grounds that the requested disclosures would violate the Trade Secrets Act,[17] and Exemptions (3) and (4) of FOIA.[18] The District Court's order permanently enjoined the Government from "publicly disclosing plaintiff's Houston Headquarters Establishment affirmative action program (dated March 1, 1973) and any other affirmative action programs of plaintiff which are substantially similar to the one dated March 1, 1973." [19]

The Government appealed and proceedings were again stayed until this court issued its decision in *National Organization for Women v. Social Security Administration*.[20] In August, 1984, NOW indicated that it was no longer interested in obtaining the affirmative action plan due to the long passage of time since its initial request. The Government filed a motion to dismiss the appeal as moot and vacate the judgment below. A motions panel of this court granted the Government's motion with respect to the specific affirmative action plan requested by NOW. However,

---

14. *Id.* at 312, 99 S.Ct. at 1723.

15. *See* Assistant Attorney General Barbara Allen Babcock, United States Department of Justice, Memorandum: Current and Future Litigation Under *Chrysler v. Brown* (June 21, 1979), Brief for Appellants app. B.

16. 509 F.2d 527 (D.C.Cir.1974).

17. 18 U.S.C. § 1905 (1982).

18. 5 U.S.C. § 552(b)(3), (4) (1982).

19. *Gulf Oil Corp. v. Marshall,* Civil Action No. 75–1491, order at 2 (D.D.C. Nov. 29, 1979), *reprinted in* Joint Appendix ("J.A.") 102.

20. 736 F.2d 727 (D.C.Cir.1984).

the motions panel refused to grant the motion to dismiss the portion of the appeal relating to the injunction prohibiting release of "substantially similar" documents. In effect, the motions panel simply deferred all questions regarding the "substantially similar" documents for determination by a merits panel.[21]

## II. ANALYSIS

### A. *Mootness*

■ The doctrine of mootness is based on the "case or controversy" requirement of Article III of the Constitution. It rests on the principle that

> a federal court has neither the power to render advisory opinions nor "to decide questions that cannot affect the rights of litigants in the case before them." Its judgments must resolve " 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' "[22]

By withdrawing its request for the 1973 plan, NOW mooted the live dispute that was once before the District Court. Gulf requested the District Court to issue an injunction restraining the Government from disclosing a broad category of documents submitted to the Government by Gulf.[23] It did not seek to challenge or invalidate the DOL regulations on their face. Gulf's only challenge to the DOL regulations was *as applied* to the decision to disclose Gulf's 1973 affirmative action

plan; no other documents had been requested and no other decisions to disclose any of Gulf's documents had been made.

Gulf argues that all of its affirmative action plans are so similar that a decision to disclose one establishes a precedent that threatens disclosure of any that are requested. This is a wholly specious argument. First, Gulf completely ignores the fact that, by virtue of NOW's withdrawal of its request for the 1973 plan, there is no existing agency or judicial "precedent" regarding the disclosure of company affirmative action plans. DOL's initial decision to release the 1973 plan "has been mooted pending appeal," therefore the underlying judgment of the agency is without force or effect.[24] In other words, the initial decision by DOL can have no bearing on "similar" documents because the initial decision was nullified when the case was mooted pending appeal. Second, even if there were some judgment with precedential effect on OFCCP decisions, it is very questionable that "the mere precedential effect of general principles" can prevent mootness.[25]

In short, Gulf is not entitled to an advisory opinion determining whether documents that have not been requested and that are not now before the court must be disclosed or withheld. Because the dispute over the 1973 affirmative action plan is no longer before us, and because Gulf did not challenge the DOL disclosure regulations except as applied to that 1973 plan, there is no longer a case or controversy.

**21.** *Gulf Oil Corp. v. Donovan,* No. 80–1127 (D.C. Cir. Nov. 19, 1984), *reprinted in* J.A. 126. The Government seemingly misunderstood the effect of the motions panel order because counsel was unsure whether the mootness issue was still live for determination by this merits panel. However, it is clear that the order of the motions panel *only* declined to grant a motion to dismiss for mootness. It did not preclude a full consideration of the mootness issue in this proceeding. Indeed, Gulf has fully briefed and argued the mootness question on this appeal.

**22.** *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975) (quoting *North Carolina v. Rice,* 404 U.S. 244, 246, 92

S.Ct. 402, 404, 30 L.Ed.2d 413 (1971) and *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 241, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937)).

**23.** Gulf sought an injunction for "any Affirmative Action Programs, EEO–1 Reports, investigatory data, Compliance Review Reports, or other documents, correspondence, memoranda, or information submitted by Plaintiff in the past or which may be submitted by Plaintiff in the future." Complaint at 7, *reprinted in* J.A. 12.

**24.** *Radiofone, Inc. v. FCC,* 759 F.2d 936, 941 (D.C.Cir.1985) (Edwards, J.).

**25.** *Id.* at 939 (Scalia, J.).

■ Gulf argues that this case is not moot because future agency decisions may threaten disclosure of other affirmative action plans. Yet, Gulf's fears on this account do not make this a situation "capable of repetition, yet evading review."[26] For this exception to the mootness doctrine to apply two requirements must be met:

> (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.[27]

■ Initially, we note that the "capable of repetition, yet evading review" exception to mootness appears to be a bogus issue in this case. Gulf has only challenged the DOL regulations *as applied* and it does not now suggest that the court erred in dismissing as moot the appeal covering the 1973 plan. Thus, Gulf does not seek a declaration that DOL's initial decision to release the 1973 plan was unlawful, nor would they be entitled to such relief in light of the motions panel dismissal on grounds of mootness. The only issue remaining before this court is whether the District Court had the authority to issue an injunction covering "substantially similar" documents (even though no such documents were before the trial court and the complaint focused solely on an *application* of DOL regulations with respect to the 1973 plan). In these circumstances, we cannot comprehend how the "capable of repetition, yet evading review" exception to mootness has any bearing on our disposition of this case.

If we assume that the District Court had the authority to grant relief beyond the scope of the complaint, *i.e.*, covering "substantially similar" documents, Gulf presumably could claim that the trial court's injunction remains necessary to avoid the release of the alleged "similar" documents in the future. On this tenuous theory, Gulf appears to contend that they are entitled to relief as to "substantially similar" documents because these documents may be subject to release in connection with future FOIA requests.[28] While we give no credit to this line of argument, we will acknowledge it to dispose of the claim that this case fits an exception to the mootness doctrine.

The prolonged proceedings of this case are testimony that the first requirement under the "capable of repetition, yet evading review" exception is not met with regard to FOIA disclosures. DOL notified Gulf of NOW's request for the 1973 plan, gave Gulf an opportunity to oppose the disclosure, and notified Gulf of the decision to disclose and agreed not to disclose the plan pending a judicial determination on the merits.[29] When NOW withdrew its request eleven years later, the document still had not been disclosed. Gulf will undoubtedly be accorded a similar opportunity to litigate fully any future decision to disclose a document.

In addition, we cannot reasonably predict that Gulf will be subject to a decision to disclose an affirmative action plan similar to its 1973 Houston Headquarters plan. Gulf points to several FOIA requests that have been filed for its plans since this

---

**26.** *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). Gulf does not invoke the "capable of repetition, yet evading review" doctrine by name, yet it repeatedly argues that the spectre of future disclosures requires review at this time. We know of no other exception to the mootness doctrine that encompasses Gulf's position.

**27.** *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 348, 46 L.Ed.2d 350 (1975).

**28.** No matter how it is stated, we find Gulf's argument to be analytically flawed. The injunction as to "substantially similar" documents rested solely on the District Court's belief that a release of the 1973 plan was impermissible. However, that decision is now moot and a nullity. There is no underlying judgment as to the alleged "similar" documents, nor is there any claim or finding that DOL's regulations are unlawful.

**29.** *See* Brief for Appellant at 7.

litigation began.[30] However, even assuming that future FOIA requests *will* be filed for Gulf's plans, the response of DOL is purely conjectural at this point. Much has happened in the twelve years since the DOL's 1973 decision to disclose Gulf's plan. In the wake of *Chrysler Corp. v. Brown* and further development of case law on FOIA, DOL no longer evaluates FOIA requests pursuant to the same procedures that it used in 1973.

It is well established that there must be an actual controversy at all stages of review[31] and that we must apply the law "as it is now, not as it stood below."[32] Here a judicial decision has changed the underlying law. Such an occurrence can moot a case in the same fashion that legislative action repealing or amending a statute can moot a challenge to the statute[33] or to the regulations issued under it,[34] and executive action rescinding or repromulgating a regulation can moot a challenge to its validity.[35] Although the DOL regulations stand as they did in 1973, the Government's view of the applicable law is nonetheless different. If intervening events that change the law can moot challenges to the validity of a statute or regulation, then *a fortiori* such events can moot challenges to *applications* of the provision.[36] The legal developments since 1973 mean that the OFCCP's course with regard to any future requests for Gulf's materials is purely hypothetical, because those requests must be judged under the law now in effect.[37] In short, the 1973 *decision* is not now "capable of repetition."

Finally, this case does not escape mootness by way of the category of "voluntary cessation" of activity.[38] The portion of the injunction covering the 1973 plan was mooted by NOW when it withdrew its request, not by any action taken by the Government. In addition, the changes that have altered the context of OFCCP's decisionmaking were not merely voluntary reforms made by the agency. They were imposed upon DOL as a result of the judicial decision in *Chrysler* and as such were neither voluntary nor initiated by OFCCP.[39]

## B. *Ripeness*

Apart from finding this case moot, we have serious doubts that the question relating to the disclosure of documents "sub-

---

**30.** *See* Affidavit of Ronald T. Martin, Sept. 4, 1984, at ¶ 2, *reprinted in* J.A. 124–25. DOL denied these requests without consideration in accordance with the District Court's injunction.

**31.** *Preiser v. Newkirk,* 422 U.S. at 401, 95 S.Ct. at 2334.

**32.** *Kremens v. Bartley,* 431 U.S. 119, 129, 97 S.Ct. 1709, 1715, 52 L.Ed.2d 184 (1977).

**33.** *See, e.g., Kremens v. Bartley,* 431 U.S. 119, 97 S.Ct. 1709, 52 L.Ed.2d 184 (1977); *Diffenderfer v. Central Baptist Church,* 404 U.S. 412, 92 S.Ct. 574, 30 L.Ed.2d 567 (1972); *Hall v. Beals,* 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969).

**34.** *See, e.g., Defenders of Wildlife, Inc. v. Endangered Species Scientific Auth.,* 725 F.2d 726, 731 (D.C.Cir.1984).

**35.** *See, e.g., Natural Resources Defense Council, Inc. v. United States Nuclear Regulatory Comm'n,* 680 F.2d 810 (D.C.Cir.1982); *Relf v. Weinberger,* 565 F.2d 722 (D.C.Cir.1977).

**36.** *See, e.g., United States v. Provenzano,* — U.S. ——, 105 S.Ct. 413, 83 L.Ed.2d 242 (1984) (legislation mooted challenges to FOIA disclosure decisions).

**37.** Gulf argues that this case is similar to *Dow Chemical Co. v. EPA,* 605 F.2d 673 (3d Cir.1979), in which Dow challenged an EPA rule that EPA then withdrew during the litigation. The Third Circuit held that Dow's challenge was not moot because EPA withdrew the rule solely to repromulgate it to eliminate procedural irregularities and stated that they would take the same position in the new rule.

The Third Circuit contrasted the circumstances in *Dow* with a situation where the controversy would become "hypothetical in as much as it would depend on the mere possibility of future action by the EPA." *Id.* at 678. That is precisely the situation here, where there is no reason to assume that DOL will decide to disclose Gulf's affirmative action plans.

**38.** *See United States v. Concentrated Phosphate Export Ass'n, Inc.,* 393 U.S. 199, 202–03, 89 S.Ct. 361, 363–4, 21 L.Ed.2d 344 (1968); *United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953).

**39.** *Cf. Monzillo v. Biller,* 735 F.2d 1456, 1460–61 (D.C.Cir.1984) (case moot where union defendant did not voluntarily refrain from proceeding with project, but acted pursuant to court order).

stantially similar" to Gulf's 1973 affirmative action plan was ever ripe for resolution. However, even if we assume that there was a ripe case or controversy when Gulf brought this action, intervening events over the past twelve years have removed the ripeness with respect to the alleged "similar" documents.

In evaluating ripeness we must consider both whether the issues have been presented in a form appropriate for judicial resolution and whether the parties would suffer hardship if their claims are not considered at the present time.[40] Several factors combine to make us conclude that, as a prudential matter, it would be inappropriate to issue what would in effect be an advisory opinion on the legality of disclosure of "substantially similar" documents.

First, as discussed above, the Government has changed its view of the relationship between the DOL regulations on disclosure and the Trade Secrets Act. Because *Chrysler Corp. v. Brown* makes it clear that the DOL regulations, which specify that documents shall be disclosed under certain circumstances, do not have the "authority of law," each FOIA request must be evaluated independently to see if the Trade Secrets Act requires DOL to withhold the document. The Department of Justice has established procedures for agencies to follow in evaluating FOIA requests that include this separate review under the Trade Secrets Act. The last FOIA request for Gulf affirmative action materials that DOL evaluated was the decision to disclose the 1973 plan. This decision was made prior to *Chrysler* and did not include an evaluation under the Trade Secrets Act. Thus, it would be premature to review future decisions based on the now inapplicable 1973 decision. As we observed in *Continental Air Lines, Inc. v. CAB,*[41]

[t]he interest in postponing review is strong if the agency position whose validity is in issue is not in fact the agency's final position. If the position is likely to be abandoned or modified before it is actually put into effect, then its review wastes the court's time and interferes with the process by which the agency is attempting to reach a final decision.

Second, the regulations are not outcome determinative. Gulf interprets the regulations to *require* OFCCP to disclose affirmative action plans. However, on their face, they give DOL much discretion in evaluating FOIA requests for materials submitted under Executive Order 11246. In addition to the specific guidelines for withholding affirmative action plans, the regulations provide that "[o]ther records may be withheld consistent with [FOIA] on a case-by-case basis, with prior approval of the Director, OFCCP."[42] Moreover, the Government assures us that in recent years OFCCP has withheld affirmative action plans that were requested under FOIA, which is testimony to the flexibility of the regulations. As this court recently has reiterated, "[t]he mere *potential* for future injury ... is insufficient to render an issue ripe for review."[43]

Third, there is no danger that the Government will disclose any of Gulf's affirmative action materials before it has an opportunity to challenge the agency action in court. The Government assures us that its standard procedure is to notify the submitter of any material which is the subject of a FOIA request. In addition, under DOL regulations, Gulf apparently may seek a determination that the material it submits is confidential even prior to a FOIA request.[44] In either instance, an OFCCP decision to disclose Gulf materials

---

**40.** *Abbott Laboratories v. Gardner,* 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967); *Eagle-Picher Indus., Inc. v. EPA,* 759 F.2d 905, 915 (D.C.Cir.1985).

**41.** 522 F.2d 107, 125 (D.C.Cir.1975) (en banc).

**42.** 41 C.F.R. § 60–40.3(b) (1985).

**43.** *MCI Cellular Telephone Co. v. FCC,* 738 F.2d 1322, 1333 (D.C.Cir.1984) (quoting *Alascom Inc. v. FCC,* 727 F.2d 1212, 1217 (D.C.Cir.1984) (emphasis in original)).

**44.** *See* 41 C.F.R. § 60–60.4(d) (1985).

would be subject to judicial review. If disclosure would be improper under the applicable legal standards, Gulf can obtain a judicial ruling to that effect before any disclosure.

Fourth, while in some circumstances case-by-case determinations of the applicability of FOIA exemptions are not desirable,[45] we have routinely required them when further factual development of the record was necessary.[46] Without a specific request at issue, Gulf's claim becomes a "generalized challenge" which would be on a "much surer footing in the context of a specific application."[47] Consideration of such a generalized claim is particularly inappropriate in this case because Gulf did not challenge the validity of the regulations on their face. This is merely a dispute over DOL's decision to disclose one of Gulf's documents in which Gulf sought broad relief including "similar" documents.

Finally, not only are the issues ill-suited for judicial review, but the hardship to Gulf in delaying review is minimal. "[T]he burden of having to file another suit ... is hardly the type of hardship which warrants immediate consideration of an issue presented in an abstract form."[48] Gulf claims that uncertainty about the potential disclosure of its affirmative action materials will "chill" its willingness to submit such material to the Government. This argument ignores the fact that affirmative action submissions are required by agency regulation; a chilling effect is arguably a concern only when uncertainty discourages *voluntary* action. Gulf also complains that it should not have to choose between submitting materials with the fear they might be disclosed and jeopardizing its status as a government contractor by refusing to submit materials prior to a judicial ruling. In so arguing, Gulf makes it plain that it is requesting an advisory opinion. The choice it finds so burdensome is no more onerous than that faced by *every* government contractor subject to Executive Order 11246.

## C. Breadth of the Injunction

[6] Our holdings on mootness and ripeness are hardly surprising given the breadth of the original injunction. Clearly, the District Court's order falls far short of the requirement that an injunction must be narrowly tailored to remedy the harm shown.[49] In enjoining disclosure not only of the 1973 Houston Headquarters affirmative action plan, but also of all "substantially similar" documents, the District Court used language that covers too broad a range of documents.[50] In fact, because Gulf argues that all its affirmative action plans are "substantially similar," the injunction arguably forbids the disclosure of information that is plainly disclosable under FOIA and DOL regulations and not protected by the Trade Secrets Act. In other words, in light of FOIA, Gulf cannot

---

**45.** *Cf. NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978) (witness' statements in pending unfair labor practice proceedings exempt from disclosure under Exemption 7(a) of FOIA and case-by-case determinations of the applicability of that exemption not necessary).

**46.** *See, e.g., Webb v. Department of Health and Human Services,* 696 F.2d 101, 106–08 (D.C.Cir. 1982) (challenge to applicability of regulation governing disclosures by Food and Drug Administration not ripe for judicial review absent particularized FOIA request); *FTC v. Owens-Corning Fiberglass Corp.,* 626 F.2d 966, 972–73 (D.C. Cir.1980) (status of subpoenaed documents as "agency records" or "trade secrets" not ripe for determination by agency or by court absent FOIA request); *FTC v. Anderson,* 631 F.2d 741, 748–49 (D.C.Cir.1979) ("further factual develop-ment" that would be provided by a FOIA request for specific documents necessary to determine if confidential documents are "agency records").

**47.** *Toilet Goods Ass'n v. Gardner,* 387 U.S. 158, 164, 87 S.Ct. 1520, 1524, 18 L.Ed.2d 697 (1967).

**48.** *Webb v. Department of Health and Human Services,* 696 F.2d at 107.

**49.** *See Aviation Consumer Action Project v. Washburn,* 535 F.2d 101, 108 (D.C.Cir.1976).

**50.** *See, e.g., Burroughs Corp. v. Schlesinger,* 403 F.Supp. 633 (E.D.Va.1975) (reverse-FOIA request for an injunction against disclosure of *all* pricing and discount information granted only for the one document that the Government proposed to disclose).

legitimately claim that Government agencies are forever forbidden from releasing *any* information in *any* affirmative action plan. Yet, Gulf's interpretation of the injunction, to bar the disclosure of all portions of all affirmative action plans (without regard to the specific contents of the plans), would achieve this result. The District Court had no authority to issue such an order.

The language of the injunction is also ambiguous. In *Common Cause v. Nuclear Regulatory Commission,*[51] this court held that an injunction restraining the Nuclear Regulatory Commission from closing meetings "similar in nature" to the one that gave rise to the action violated the specificity requirements of Rule 65(d) of the Federal Rules of Civil Procedure.[52] In this case, as in *Common Cause,* the District Court's order did not define "similar" or describe the characteristics of the 1973 Houston Headquarters plan that necessitated that it be withheld. While the context of the litigation itself may sometimes be specific enough to provide notice to the parties of the acts the court seeks to restrain,[53] the circumstances of this case do not provide such a cure. Gulf's complaint was even less specific than the District Court's order, as it covered every conceivable type of affirmative action information. In addition, the only document before the District Court was Gulf's 1973 Headquarters plan, so the court had no occasion to determine if any other plans were in fact "substantially similar" to the 1973 plan. The term itself admits of some variation. It might be permissible to extend a prohibition on release to documents clearly bound up with disclosure of the document under consideration and clearly covered by an

established agency policy to release. But here we have nothing more than Gulf's assertion that *all* its plans are virtually identical[54] to guide application of the court's order.

The problems with the breadth of the injunction are underlined by the passage of time and the intervening events in this case. Even if valid at the time of the initial decision to disclose, *Chrysler Corp. v. Brown* made hypothetical Gulf's showing of future harm from disclosures not yet requested. By extending the injunction to cover those disclosures, the District Court improperly anticipated future cases. As this court recently stated, "[i]t makes little sense to rest a judgment on *prospective* relief on decisions made several years ago under very different circumstances."[55]

## III. Conclusion

We find that NOW's withdrawal of its FOIA request has made Gulf's reverse-FOIA action entirely moot, including the portion of the District Court's injunction that prohibited disclosures of "substantially similar" documents. This case does not involve a challenge to the validity of the DOL disclosure regulations, but a dispute based on their application to a particular disclosure, which is no longer at issue. Even if there were a case or controversy regarding similar documents originally, which we seriously doubt, intervening events have made that dispute unripe. In addition, the injunction as issued was overbroad. Consequently, we reverse and remand with instructions to the District

**51.** 674 F.2d 921, 926–27 (D.C.Cir.1982).

**52.** Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; Fᴇᴅ.R.Cɪv.P. 65(d).

**53.** *See, e.g., Williams v. United States,* 402 F.2d 47, 48–49 (10th Cir.1967).

**54.** *See* Brief of Plaintiff-Appellee at 26, 35–37.

**55.** *Foundation on Economic Trends v. Heckler,* 756 F.2d 143, 158–59 (D.C.Cir.1985) (affirming the part of an injunction prohibiting a *specific* university experiment that would release genetically engineered organisms into the environment but vacating the portion that prohibited *all* experiments that would release such organisms) (emphasis in original).

Court to vacate its order and injunction and to dismiss this case.[56]

*So ordered.*

**56.** *See United States v. Munsingwear, Inc.,* 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950).