**N. Conant WEBB, M.D., Appellant,**

v.

**DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al.**

No. 81–2345.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 22, 1982.

Decided Dec. 14, 1982.

Frederick Townsend, with whom Alan B. Morrison and David C. Vladeck, Washington, D.C., were on the brief, for appellant.

Patricia J. Kenney, Asst. U.S. Atty., with whom Stanley S. Harris, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence and Michael J. Ryan, Asst. U.S. Attys., Thomas Scarlett, Chief Counsel, Food and Drug Administration, Washington, D.C., were on the brief, for appellees, Department of Health and Human Services, et al.

Joel E. Hoffman, with whom Patricia R. Sharin and Bruce J. Brennan, Washington, D.C., were on the brief, for appellee, Pharmaceutical Manufacturers Association.

Before WILKEY and GINSBURG, Circuit Judges and BAZELON, Senior Circuit Judge.

Opinion for the Court filed by Circuit Judge WILKEY.

WILKEY, Circuit Judge:

Appellant, a medical doctor seeking to obtain information from the Food and Drug Administration under the Freedom of Information Act, appeals from the district court's dismissal of his suit. Because we agree with the district court that appellant's attack on the validity of an FDA regulation is not justiciable in the present form, we affirm its decision to dismiss.

## I. BACKGROUND

### A. *Regulatory Scheme*

Before a manufacturer can legally market a new drug[1] in interstate commerce, the Food and Drug Administration (FDA) must approve a New Drug Application (NDA) for that drug.[2] An NDA must contain extensive data concerning the drug and its intended use, including full reports of pre-clinical and clinical investigations, adverse reaction reports, and published articles on the use or effectiveness of the drug.[3] After evaluating an NDA, the FDA either approves it, rejects it, or requests supplemental information from the submitter.

Every manufacturer of a new drug must obtain a separately approved NDA. Thus,

---

1. A "new drug" is defined, in part, as:

    Any drug . . . the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof . . . .

21 U.S.C. § 321(p)(1) (1976). This includes a drug currently on the market if it is proposed that it be used for a "new" purpose.

2. 21 U.S.C. § 355 (1976).

3. 21 C.F.R. § 314.1 (1982).

a drug manufacturer which has submitted an NDA has a competitive interest in seeing that the information contained in its NDA is not prematurely released to the public. If a manufacturer's competitor could obtain all the data in the manufacturer's NDA, it could utilize them in its own NDA without incurring the time, labor, risk, and expense involved in developing them independently. Premature disclosure of NDA data is further discouraged by the existence of criminal sanctions for FDA officials who release trade secrets without the submitter's consent. These sanctions are contained in both the Food, Drug, and Cosmetic Act [4] and the Trade Secrets Act.[5]

In an effort to balance the need to prevent premature disclosure of NDA data against the policy of open disclosure embodied in the Freedom of Information Act (FOIA),[6] the FDA promulgated 21 C.F.R. § 314.14, the regulation presently being challenged.[7] Under section 314.14 the amount of material to be disclosed in response to a FOIA request depends on the stage of agency review to which the NDA has progressed and the extent to which the information has already been made available to the public. If the NDA is pending and its existence has not been publicly dis-

closed or acknowledged, no data or information in the NDA file will be disclosed.[8] If the NDA is pending, but its existence has been publicly disclosed, the agency may release summaries of selected portions.[9] If the NDA has been approved, more information is made available.[10] Finally, if the NDA is abandoned or denied, all information not previously disclosed may be obtained.[11]

■ When the FDA denies a FOIA request, the requester is entitled to *de novo* review of the agency's decision in a federal district court.[12] If the FDA has denied the request on the grounds that the information sought is confidential and thus covered by Exemption 4 of FOIA,[13] the agency requires the drug manufacturer to defend, presuming that a failure to defend constitutes a waiver of the confidentiality defense.[14] From that point on, the manufacturer bears the burden of proving that the information is covered by Exemption 4.

### B. *The Present Litigation*

Dr. N. Conant Webb filed a FOIA request with the FDA in July, 1980, seeking disclosure of the safety and effectiveness data[15] contained in Ciba-Geigy's pending NDA for

---

**4.** 21 U.S.C. § 331(j) (Supp. IV. 1980). The cited section makes it a crime for
any person to . . . reveal[ ] . . . any information acquired under authority of section . . . 355 [the new drug provision, 21 U.S.C. § 355] of this title concerning any method or process which as a trade secret is entitled to protection.

**5.** 18 U.S.C. § 1905 (Supp. IV 1980). The Trade Secrets Act covers all federal officers or employees and prohibits the disclosure of "any information coming to him in the course of his employment . . . which information concerns or relates to the trade secrets . . . of any person . . . ."

**6.** 5 U.S.C. § 552 (1976 & Supp. IV 1980).

**7.** 42 Fed.Reg. 3093 (1977).

**8.** 21 C.F.R. § 314.14(c) (1982).

**9.** *Id.* § 314.14(d).

**10.** *Id.* § 314.14(e).

**11.** *Id.* § 314.14(f).

**12.** 5 U.S.C. § 552(a)(4)(B) (1976).

**13.** *Id.* § 552(b)(4). Exemption 4 exempts matters that are "trade secrets and commercial or financial information obtained from a person and privileged or confidential" from the disclosure requirements of FOIA. This court has held that Exemption 4 covers information, the disclosure of which is likely " 'to impair the Government's ability to obtain necessary information in the future; or . . . to cause substantial harm to the competitive position of the person from whom the information was obtained.' " *Charles River Park "A", Inc. v. HUD,* 519 F.2d 935, 940 (D.C.Cir.1975) (quoting *National Parks & Conservation Association v. Morton,* 498 F.2d 765, 770 (D.C.Cir.1974).

**14.** 21 C.F.R. § 20.53 (1982).

**15.** Safety and effectiveness data include "all studies and tests of a drug on animals and humans and all studies and tests on the drug for identity, stability, purity, potency, and bioavailability." 21 C.F.R. § 314.14(i) (1982).

the drug Anturane.[16] Webb sought the information because of his interest in evaluating and assessing clinical investigations of new drugs, a subject on which he has lectured in the past. Because the Anturane NDA was pending, FDA denied the request, relying on FOIA Exemption 4, the Food, Drug, and Cosmetic Act, the Trade Secrets Act, and various regulations, including section 314.14.[17] Webb's administrative appeal was denied for the same reasons.

■ On 22 January 1981 Webb filed the present suit in federal district court, naming the Department of Health and Human Services, the FDA, and Ciba-Geigy as defendants. The relief sought was twofold. First, Webb sought to compel disclosure of the safety and effectiveness data in the Anturane NDA file. Second, he asked the court to invalidate section 314.14, claiming that the regulation violated FOIA because it permitted the agency to deny his request without a document-by-document review of the file.[18] Ciba-Geigy initially indicated that it intended to defend the suit on the merits, but less than five months later it released the requested information pursuant to an agreement with Webb.[19] Webb then filed a motion for summary judgment on the issue of the validity of section 314.14. The federal appellees, joined by intervenor, the Pharmaceutical Manufacturers Association (PMA), opposed the motion, and asked the court to dismiss the suit because it no longer involved a live case or controversy.

On 24 September 1981 the district court granted appellees' motion to dismiss, ruling that the case was both moot and not ripe.

The court held that insofar as the challenge to the regulation rested on Webb's request for information in the Anturane NDA it was moot since that information was already available to him. The court then concluded that it could not properly rule on the validity of the regulation in the absence of an actual denial of information, holding that such a challenge was premature. Finally, the court held that it was not necessary to find the regulation valid in order to rule on Webb's request for attorneys' fees, noting that it was only required to find that the FDA had a reasonable basis for denying Webb's FOIA request. After the district court amended its order to clarify that Webb's dismissal did not prevent him from making a request for attorneys' fees, Webb appealed to this court.

## II. TIMELINESS OF THE APPEAL

■ At the outset appellees assert that Webb's appeal should be dismissed because it was not filed in a timely manner. Rule 4 of the Federal Rules of Appellate Procedure provides that the notice of appeal must be filed within 60 days after the judgment is entered.[20] The district court below entered its judgment on 24 September 1981, yet the notice of appeal was not filed until 14 December 1981, more than 80 days later. Webb argues that the filing deadline was stayed for 20 days because he filed a motion to amend the judgment, a motion on which the court did not rule until 15 October 1981. Appellees counter by contending that while

16. An NDA had previously been approved for the use of Anturane in the treatment of chronic and intermittent gouty arthritis. Ciba-Geigy submitted the present NDA in support of its proposal to use the drug for the prevention of sudden death in survivors of heart attacks.

17. The FDA did release a letter sent by it to Ciba-Geigy, but only because Ciba-Geigy had previously released the letter.

18. On appeal Webb asserts that the present action also involves the FDA's denial of his request for information in an NDA for the drug Rimso-50. This is not the case. Although Webb made a FOIA request for information in the Rimso-50 NDA, the FDA's denial of that

request was not challenged in the court below. It was not included in the original complaint, nor was the complaint ever amended. We, therefore, refuse to rule on the propriety of the FDA's action with respect to Rimso-50.

19. In the agreement Webb agreed to dismiss Ciba-Geigy from the present action.

20. In most civil cases, the notice of appeal must be filed within 30 days after judgment is entered. However, the period is increased to 60 days "if the United States or an officer or agency thereof is a party." Fed.R.App.P. 4(a)(1).

a Rule 59(e) motion to amend the judgment does stay the time for filing an appeal,[21] Webb's motion did not come under that rule because it was a motion for attorneys' fees. They point out that the Supreme Court has recently held that a motion for attorneys' fees is not governed by Rule 59(e).[22] Therefore, appellees argue, Webb's motion did not stay the time for filing an appeal and his notice was filed after the 60 day period expired. Although appellees' argument is technically correct, an examination of the circumstances of this case prompts us to hold that Webb should be allowed to proceed.

The district court's 24 September judgment contained language indicating that Webb would not be entitled to attorneys' fees.[23] At the time, the law with respect to motions for attorneys' fees was in great flux. Two circuits [24] had held that a motion for attorneys' fees was governed by Rule 59(e) and that, accordingly, it had to be filed within 10 days of the judgment.[25] Four circuits had held to the contrary.[26] Wishing to preserve his right to obtain attorneys' fees, Webb filed a "motion to amend the judgment," asking the court to clarify its position on attorneys' fees. Appellees consented to the order amending the judgment, referring to Rule 59(e). More importantly, the court, without comment,

granted the motion and amended the order to permit Webb to move for attorneys' fees, apparently treating it as a motion to amend the judgment under Rule 59(e). *Subsequently,* the Supreme Court resolved the conflict concerning the applicability of Rule 59(e) to a motion for attorneys' fees by holding that such a motion did not have to be filed within the 10 day period imposed by Rule 59(e).[27] Thus, although appellees are technically correct that Webb's "motion to amend the judgment" was not a Rule 59(e) motion that stayed the filing deadline, we find that this case comes within the narrow exception to Rule 4 recognized by the Supreme Court in *Harris Lines, Inc. v. Cherry Meat Packers, Inc.,*[28] and *Thompson v. Immigration and Naturalization Service.*[29]

In *Harris Lines,* appellant's counsel sought and obtained from the district court an extension of the filing date for appeal on the grounds of excusable neglect. The court of appeals dismissed the appeal as untimely because it disagreed with the district court's ruling on excusable neglect. The Supreme Court reversed, stressing that it would be unfair to penalize the appellant for relying on the trial judge's ruling. "Whatever the proper result as an initial matter on the facts here, the record contains a showing of *unique circumstances* sufficient that the Court of Appeals ought

---

**21.** Fed.R.App.P. 4(a)(4).

**22.** *White v. New Hampshire Department of Employment Security,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982).

**23.** The district court, after noting that it did not need to rule on the validity of section 314.14 in order to determine the attorneys' fees issue, stated that the regulation provided "a reasonable basis for the Agency's action here." *Webb v. Department of Health and Human Services,* No. 81–00159, *slip op.* at 3 (D.D.C. 24 September 1981). This seemed to be a disposition of the attorneys' fees issue because the court had previously stated that "in order to *deny* the attorney's fees request; it is only required that the defendant have had a reasonable basis for its actions." *Id.* (emphasis added) (citation omitted).

**24.** *Glass v. Pfeffer,* 657 F.2d 252 (10th Cir. 1981); *White v. New Hampshire Department of Employment Security,* 629 F.2d 697 (1st Cir.

1980), *rev'd,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982).

**25.** Rule 59(e) provides: "A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(e).

**26.** *Obin v. District No. 9, International Association of Machinists,* 651 F.2d 574 (8th Cir.1981); *Johnson v. Snyder,* 639 F.2d 316, 317 (6th Cir. 1981); *Bond v. Stanton,* 630 F.2d 1231, 1234 (7th Cir.1980); *Knighton v. Watkins,* 616 F.2d 795, 797–98 (5th Cir.1980).

**27.** *White,* 102 S.Ct. at 1167–68.

**28.** 371 U.S. 215, 83 S.Ct. 283, 9 L.Ed.2d 261 (1962).

**29.** 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964).

not to have disturbed the motion judge's ruling." [30]

In *Thompson* the Court explained what unique circumstances in *Harris Lines* warranted a lenient application of the filing deadline. The district court in *Thompson* had erroneously informed appellant that his motion for a new trial was made in a timely manner. After the motion was denied, appellant's appeal was dismissed as untimely. The Supreme Court again reversed, comparing the unique circumstances in *Thompson* with those in *Harris Lines*.

> Here, as there, petitioner did an act which, if properly done, postponed the deadline for the filing of his appeal. Here, as there, the District Court concluded that the act had been properly done. Here, as there, the petitioner relied on the statement of the District Court and filed the appeal within the assumedly new deadline but beyond the old deadline.[31]

These same "unique circumstances" are present here. Webb filed what he thought was a Rule 59(e) motion. Had it been a Rule 59(e) motion, the filing deadline would have been stayed. The district court apparently concluded that the motion was a Rule 59(e) motion. And, although Webb did not rely on an express statement by the district court that the motion was a Rule 59(e) motion, he had good reason to believe that the court was treating it as such, given the unsettled state of the law and the court's willingness to grant the motion. It would be unfair to dismiss Webb's appeal in light of the circumstances. *Harris Lines* and *Thompson* teach that such unfairness should be avoided.

### III. JUSTICIABILITY

■ Webb concedes that his request for the information in the Anturane NDA was mooted by Ciba-Geigy's release of that information.[32] Nevertheless, he argues that his challenge to section 314.14 is still justiciable. We disagree, concluding that in the absence of a particularized FOIA request, the validity of section 314.14 is not ripe for judicial review.

The Supreme Court's opinion in *Abbott Laboratories v. Gardner*[33] continues to be the guidepost for determining whether issues presented to a court are ripe for judicial review. In *Abbott Laboratories,* the Court indicated that the relevant inquiry is two-pronged. In order to determine the ripeness of an issue, we are required to "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." [34] This two-pronged inquiry in essence requires the court to balance its interest in deciding the issue in a more concrete setting against the hardship to the parties caused by delaying review.[35] Thus, if the hardship to the parties is slight, "only a minimum showing of countervailing judicial or administrative interest is needed . . . to tip the balance against judicial review." [36]

We first consider the fitness of the issues for judicial decision. Throughout his brief Webb asserts that various documents which *might* be discoverable under FOIA *could* be contained in a pending NDA.[37] This shows that the validity of applying section 314.14 to a FOIA request will vary depending on what information is actually contained in the NDA file. Further, the amount of in-

---

**30.** 371 U.S. at 217, 83 S.Ct. at 285 (emphasis added).

**31.** 375 U.S. at 387, 84 S.Ct. at 398.

**32.** Appellant's Brief at 12. The same concession was made during oral argument.

**33.** 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967).

**34.** *Id.* at 149, 87 S.Ct. at 1515.

**35.** *Midwestern Gas Transmission Co. v. FERC,* 589 F.2d 603, 618 (D.C.Cir.1978); *New York*

*Stock Exchange, Inc. v. Bloom,* 562 F.2d 736, 740–41 (D.C.Cir.1977); *Independent Bankers Association v. Smith,* 534 F.2d 921, 929 (D.C.Cir.1976); *Continental Airlines, Inc. v. CAB,* 522 F.2d 107, 124–25 (D.C.Cir.1975) (en banc).

**36.** *Diamond Shamrock Corp. v. Costle,* 580 F.2d 670, 674 (D.C.Cir.1978).

**37.** Appellant's Brief at 23–25; Appellant's Reply Brief at 3–4.

formation released pursuant to section 314.-14 will vary depending on the stage to which the NDA has progressed and the extent to which the information has already been made available to the public.[38] Thus, if section 314.14 were challenged in the context of a particularized FOIA request, a court would be able to determine what documents, if any, should have been released, but were not, because of section 314.14. In contrast, if the district court were to rule on the issue now, it would be required to conduct a pseudo-rulemaking proceeding, examining all of the considerations that led the agency to permit or prevent disclosure in the various situations. Therefore, since "judicial appraisal of [the issue] is likely to stand on a much surer footing in the context of a specific application of this regulation than could be the case in the framework of [a] generalized challenge" we conclude that the issue is not fit for judicial review.[39] Accordingly, unless the interest in postponing judicial review is outweighed by the resultant hardship to Webb, review should be delayed.

The only hardship Webb will endure as a result of delaying consideration of this issue is the burden of having to file another suit.[40] This is hardly the type of hardship which warrants immediate consideration of an issue presented in abstract form. In *Abbott Laboratories,* a case in which immediate review was granted, the plaintiff's conduct was directly governed by the regulation and stiff penalties were attached for noncompliance.[41] Thus, as this court noted in a subsequent case, the plaintiff in *Abbott Laboratories* faced a choice between "burdensome compliance and risky noncompliance."[42] Webb is not facing such a dilemma. He does not have to alter his day-to-day conduct in order to comply with section 314.14; nor will he be subject to serious penalties if he fails to comply. He will only be required to file another action when he is again denied information pursuant to section 314.14. As we observed in *New York Stock Exchange, Inc. v. Bloom,*[43] "the inconvenience of having to initiate more than one suit [is not] a hardship sufficient to justify review" when the issues are not otherwise fit for judicial decision.[44]

Webb argues that if a court refuses to adjudicate the validity of section 314.-14 in the present context, it will never be reviewed because the validity of the agency's actions is never an issue in a FOIA case. He therefore concludes that the issue must be resolved at this time. If Webb were correct in asserting that the challenged section would never be reviewable in the future, we might agree with his conclusion.[45] However, he misunderstands the nature of a FOIA action and therefore arrives at the wrong result.[46] Granting full access

---

**38.** *See* text at notes 8–11, *supra.*

**39.** *Toilet Goods Association, Inc. v. Gardner,* 387 U.S. 158, 164, 87 S.Ct. 1520, 1524, 18 L.Ed.2d 697 (1967).

**40.** At oral argument Webb argued that the district court's refusal to adjudicate section 314.-14's validity at the present time worked an extraordinary hardship on him because he is a frequent FOIA requester who constantly seeks documents in NDAs. However, nothing in the record suggests that Webb has made more than two FOIA requests, one of which resulted in his receiving the requested documents. *See* text at note 19, *supra.* In any event, the hardship is not great because Webb is only required to file one FOIA action in which there is a live dispute before he can challenge section 314.14. As noted in the text above, this is not the type of hardship which warrants immediate review of issues not otherwise fit for judicial decision.

**41.** 387 U.S. at 152–53, 87 S.Ct. at 1517.

**42.** *New York Stock Exchange, Inc. v. Bloom,* 562 F.2d 736, 741 (D.C.Cir.1977).

**43.** 562 F.2d 736 (D.C.Cir.1977).

**44.** *Id.* at 742.

**45.** In determining "whether there is sufficient hardship to the parties to warrant our review" the court should determine "whether the challenged action will be reviewable in the future. If it will not be reviewable later, our review now may be warranted . . . ." *Bethlehem Steel Corp. v. EPA,* 536 F.2d 156, 163 (D.C.Cir.1976).

**46.** Webb maintains that this court's decision in *Mead Data Central, Inc. v. Department of the Air Force,* 566 F.2d 242 (D.C.Cir.1977), bars a district court from adjudicating the validity of section 314.14 in the context of a particularized

to the requested documents, as was done in this case, terminates a FOIA action (except possibly for attorneys' fees). Denial of full access, which conceivably may occur in the next case Webb files, will preserve the controversy.[47]

If, in the future, Webb requests information in an NDA and the FDA applies section 314.14 to deny access to that information, Webb will be free to file an action in district court. Even if the FDA turns the defense of that action over to the drug manufacturer who submitted the information, two issues will still be ripe for judicial review. First, the court should consider whether the FDA's *administrative* denial of access to the documents based on section 314.14 was unlawful. Second, the court should decide whether, considering Exemption 4 of FOIA, the Trade Secrets Act, and section 331(j) of the Food, Drug, and Cosmetic Act,[48] Webb would *currently* be entitled to the *particular* documents he requested. Thus, the validity of section 314.14 can be challenged in the future any time there is a denial of access submitted to the district court for adjudication. We therefore refuse to require the district court to consider the issue in its present abstract form.[49]

## IV. CONCLUSION

Although unique circumstances excuse Webb's technical failure to comport with the requirements of Rule 4 of the Federal Rules of Appellate Procedure, we conclude that the district court correctly refused to adjudicate Webb's substantive claim. Webb is free to challenge the validity of section 314.14 any time that section is used to deny him access to particular documents, but he is not entitled to an adjudication of that issue until he presents it in the form of a live dispute over particular documents. Accordingly, the judgment of the district court is

*Affirmed.*

---

FOIA request. In *Mead Data Central* we rejected the argument that an agency's failure to follow the procedures outlined in *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974), at the administrative level required us to reverse the district court's holding that the requested information was exempt. Webb argues that *Mead Data Central* precludes a court in a FOIA case from reviewing the procedures followed by an agency at the administrative level. But that case merely held that "[i]n a FOIA action the district court is *not limited* to review of the quality of the agency's decision-making." *Mead Data Central,* 566 F.2d at 251 (emphasis added). We did not hold that the district court could not review the legality of the agency's actions.

47. Counsel for Webb informs the court that the sequence of events seen here is not novel. Counsel asserts that in five lawsuits over the past four years, Webb's attorneys have represented FOIA requesters denied access to drug testing data on the basis of section 314.14; in each case, the FDA turned defense of the action over to the manufacturer; in each case, the manufacturer released the information prior to judicial decision on the merits. Brief for Appellant at 6 n. 3. Webb's few examples do not demonstrate, however, that section 314.14 is immune from judicial review. We cannot infer from counsel's limited encounters that drug manufacturers will always abandon the fray and voluntarily release the information once a civil action is under way. Our holding today makes clear that section 314.14 will be subject to review when a manufacturer denies a FOIA requester the full access he seeks.

48. It may be argued that information in an NDA which is a "trade secret" within the meaning of the Trade Secrets Act or the Food, Drug, and Cosmetic Act is covered by FOIA's Exemption 3. 5 U.S.C. § 552(b)(3) (1976). Exemption 3 relieves an agency from disclosing matters "specifically exempted from disclosure by [a qualified] statute." Because we do not reach the merits in the present case, we express no opinion concerning the validity of that argument.

49. Webb contends that the issue of section 314.14's validity is ripe because the FDA's application of that section is currently denying him access to information in the Rimso-50 NDA. If that is true, Webb is free to file an action in district court. However, as noted above, this action does not involve the information in the Rimso-50 NDA. *See* note 18, *supra.*