## FRIENDS OF KEESEVILLE, INC.

v.

## FEDERAL ENERGY REGULATORY COMMISSION.

No. 87–1691.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 13, 1988.

Decided Oct. 7, 1988.

---

William J. Kenney, for petitioner.

Hanford O'Hara, Atty., F.E.R.C., with whom Catherine C. Cook, Gen. Counsel and Jerome M. Feit, Sol., F.E.R.C., Washington, D.C., were on the brief, for respondent.

William J. Kenney also entered an appearance for intervenor, Village of Keeseville, N.Y.

Before WALD, Chief Judge, and STARR and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Chief Judge WALD.

WALD, Chief Judge:

Petitioner, Friends of Keeseville ("Friends"), challenges certain orders of the Federal Energy Regulatory Commission ("FERC"). FERC contends that the orders were proper and that Friends is not currently aggrieved by the Commission's actions. We have concluded that this case is partly moot and partly unripe, and that adjudication at this time is therefore inap-

propriate. The petition is accordingly dismissed.

## FACTS

This case involves the efforts of various parties to develop a hydroelectric power project on the Ausable River in upstate New York. In 1981, the Village of Keeseville, New York and Essex County, New York filed an application for a preliminary permit.[1] The Commission issued the permit on March 31, 1982. *County of Essex and Village of Keeseville*, 18 F.E.R.C. ¶ 62,551 (1982). On August 31, 1982, the County petitioned the Commission for permission to withdraw as co-permittee. The preliminary permit expired by its terms on February 29, 1984. During the pendency of the preliminary permit, the Village authorized the formation of Friends of Keeseville, Inc., a non-profit corporation designed to facilitate the financing and development of the Ausable River project. On March 2, 1984, immediately following the expiration of the Village's preliminary permit, Friends filed an application for an exemption.[2]

On July 27, 1984, the Commission issued an order directing Friends to show cause why its exemption application was not an abuse of municipal preference.[3] *Friends of Keeseville, Inc.*, 28 F.E.R.C. ¶ 61,158 (1984). The Commission evidently believed that the Village had functioned as a "proxy" for Friends, allowing Friends to gain an advantageous first-filed position by submitting an application immediately upon the expiration of the Village's permit. The Commission explained:

> [A]buse of the municipal preference is established by evidence indicating that the actions of a municipality and a non-municipality were coordinated in a manner that used the municipal preference

---

1. A preliminary permit affords the permittee an opportunity to study the feasibility of a contemplated project. *See* 16 U.S.C. § 798. Development of the project requires a license, *see* 16 U.S.C. § 799, or, in the case of a small hydropower project, a modified license known as an "exemption," *see* 16 U.S.C. § 2705.

2. Friends' earlier application for an exemption, filed on February 29, 1984, was rejected by the Commission pursuant to regulations which proscribed new applications prior to the expiration

of an existing permit. *See* Friends of Keeseville, Inc., 28 F.E.R.C. ¶ 61,158, at 61,297 and 61,298 n. 8 (1984).

3. The Federal Power Act provides that "the Commission shall give preference to applications [for permits] by States and municipalities, provided the plans for the same are deemed by the Commission equally well adapted ..." 16 U.S.C. § 800(a).

available to the municipality alone to place the non-municipal applicant in a competitively advantageous position. *Id.* at 61,297. Friends' response to the show cause order was evidently unsatisfactory to the agency: on July 24, 1985, the Commission issued an order which dismissed the exemption application and imposed a one-year ban on any filings by Friends or the Village proposing development of the Ausable River site. *Friends of Keeseville, Inc.,* 32 F.E.R.C. ¶ 61,111 (1985). Friends did not seek rehearing of this order.[4]

On December 31, 1985, Cash Flow Systems ("CFS") submitted its own application for a preliminary permit for the Ausable River site. The Commission set July 7, 1986, as the deadline for competing applications. On June 2, 1986, Friends filed a motion for reconsideration of the July 24, 1985 order, requesting that the agency reverse its earlier decision and accept its exemption application as of March 2, 1984.[5] On July 11, 1986, the Commission's Secretary denied the request for reconsideration on the ground that it was in substance an untimely request for rehearing of the July 24, 1985 order. On July 30, 1986, a preliminary permit was granted to CFS.

On August 11, 1986, Friends appealed the Secretary's denial of its request for rehearing, challenged the grant of the permit to CFS, and filed its own new license application for the Ausable River site. These challenges were all rejected in the Commission's order of June 5, 1987. Friends petitioned FERC for rehearing of

that order, and on October 23, 1987, the agency denied rehearing. *Friends of Keeseville, Inc.,* 41 F.E.R.C. ¶ 61,071 (1987). This appeal followed.

On March 23, 1988, the CFS permit was cancelled by the agency after CFS failed to submit a required progress report. CFS did not appeal this order, and the cancellation became final.

### DISCUSSION

#### A. *Mootness*

■ When this petition for review was filed, the injury alleged was that CFS, rather than Friends, had received the Ausable River permit. Petitioner filed a timely challenge to the agency order which awarded a preliminary permit to CFS. The controversy concerning this order, however, has been rendered moot by the cancellation of the CFS permit.

The challenged order had the effect of awarding a license to CFS and denying Friends an opportunity to compete for it. Unquestionably the petitioner suffered legally cognizable injury as a result of the agency's decision. The case must nevertheless be dismissed as moot if "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L.Ed.2d 491 (1969). In the present case, it is clear that Friends suffers no continuing judicially remediable injury as a result of the Commission's previous grant of the permit to CFS.[6]

---

**4.** The Federal Power Act requires that application for rehearing must be made within thirty days after the issuance of a FERC order. 16 U.S.C. § 825*l*(a). Judicial review is available only if a petition for rehearing has been filed, *see id.;* petitions for review must be filed within sixty days after the Commission has denied rehearing. *See* 16 U.S.C. § 825*l*(b).

**5.** In the alternative, Friends requested that its application be accepted as of December 31, 1985.

**6.** In a practical sense Friends may be worse off today than it might have been had the Commission never issued the challenged orders. If Friends had been awarded the development permit, it might by this time have realized revenues

from operation of the planned facility. But even if such losses could be proved, they would not be judicially remediable, since damages may not be awarded against the Commission. *See* 5 U.S.C. § 702 (court has jurisdiction to award "relief other than money damages"); 16 U.S.C. § 825*l*(b) (court has power "to affirm, modify, or set aside" orders of the Commission); *see also* 16 U.S.C. § 825p ("No costs shall be assessed against the Commission in any judicial proceeding ... under this chapter").

Friends also asserts that the Commission's actions have deprived it of unspecified state and federal tax benefits. Since Friends has utterly failed to substantiate this claim, we conclude that it provides no basis for a finding that the petitioner is currently aggrieved.

■ If this court were to hold that the agency acted arbitrarily and capriciously in awarding the permit to CFS, we could do no more than reverse that grant and order the Commission to consider the matter anew. Due to the cancellation of the CFS permit, judicial intervention is unnecessary: Friends will in any event have an opportunity to compete for development rights to the Ausable River site. The CFS permit, which is without current legal effect, has no present impact on Friends.[7]

B. *The Threat of Future Injury*

■ In addition, Friends asserts that the Commission acted arbitrarily and capriciously in refusing to reconsider its order of July 24, 1985, which rejected Friends' March 2, 1984 application and imposed a one-year ban on further filings. We cannot say that the dispute concerning this order is moot, since there exists at least the possibility that this order will affect the petitioner's interests at some point in the future. FERC argues that Friends "can accomplish now the same thing as it could accomplish if it succeeded in overturning the Commission's orders under review here: the unfettered opportunity to apply for a license or exemption." Respondent's Brief at 9. This is not entirely accurate. FERC's original basis for rejecting Friends' application and imposing the one-year ban on any subsequent attempts was that Friends had used the Village as a "proxy" in order to obtain an advantageous first-filed position. It seems somewhat contradictory then for the agency to con-

tend at this juncture that the first-filed position would not have secured any advantage to Friends after all. We must acknowledge at least the possibility that Friends' chances of obtaining a license or exemption would be improved if the agency were compelled to treat its application as having been filed on March 2, 1984, rather than at some time in 1988. The question is whether a diminished chance of success in the application process, caused by the Commission's refusal to rescind its earlier orders, is an injury sufficiently concrete to warrant the invocation of judicial power.

The parties, we note, have provided little elucidation regarding the *likelihood* that a decision in petitioner's favor would affect the outcome of any future application process. We do not know whether any competing entity actually has applied for a permit (in which case Friends would have lost its opportunity to be the first-filed applicant).[8] At oral argument petitioner's counsel suggested that municipalities in the region might file competing applications, but counsel could offer no estimate of the likelihood that such competitors would emerge. If Friends still has the opportunity to file first, and if no municipality files a competing application, then the Commission's rejection of its earlier application may impose no burden on its current chances of obtaining a permit. If competitors have already filed, however, then it makes a great difference whether Friends' March 2, 1984 application is accepted. Even as the first-filed applicant, Friends

---

7. The case does not retain its character as a live dispute simply because a ruling in Friends' favor might pave the way for a subsequent suit for attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d). A request for attorneys' fees does not preserve a case which is otherwise moot. *See Monzillo v. Biller,* 735 F.2d 1456, 1463 (D.C.Cir.1984). We do not read the Supreme Court's opinion in *Furniture Moving Drivers v. Crowley,* 467 U.S. 526, 536 n. 11, 104 S.Ct. 2557, 2563 n. 11, 81 L.Ed.2d 457 (1984) as suggesting that a pending claim for attorneys' fees, standing alone, could require (or entitle) a federal court to adjudicate the merits of a dispute which in other respects was no longer live. The interests in judicial economy served by consistent application of the mootness doctrine would be largely undermined if appellate courts undertook to resolve questions of law which

had no effect on the parties save for their possible relevance to a subsequent ancillary dispute over attorneys' fees. *See S–1 v. Spangler,* 832 F.2d 294, 297 n. 1 (4th Cir.1987). *Cf. Pierce v. Underwood,* —— U.S. ——, 108 S.Ct. 2541, 2547–48, 101 L.Ed.2d 490 (1988) (interest in judicial economy militates against de novo appellate review of trial court's determination, in suit for attorneys' fees, that Government's position was not "substantially justified").

8. We underscore our perplexity concerning the parties' failure to resolve this issue. Information as to the existence *vel non* of current applicants for the Ausable River site would appear eminently accessible to either counsel, yet oral argument provided no enlightenment.

might suffer injury from the denial of municipal preference if a municipality submits a competing application.[9] Clearly there exists a possibility that Friends will be injured by the Commission's orders, but we have little sense of how great that possibility is.

In some situations, a diminished chance of success in the administrative process plainly constitutes a judicially cognizable injury. If an agency considers improper factors in reaching a decision, a challenger need not show with certainty that the outcome would have been different if the improper considerations had been eliminated.[10] Similarly, an appellant alleging trial court error is not required to prove that he would have prevailed below if the errors had not been present. A challenger must demonstrate that the errors alleged were not harmless,[11] but such a showing does not require proof that the errors necessarily changed the result of the proceedings below. The typical appellate reversal, in short, rests upon a judgment that the outcome of an earlier proceeding *might have been* different had the law been properly applied; or, in other words, that legal error materially diminished one party's chances of success. If this be "speculative," then speculation lies at the core of the appellate process.

Courts are less willing, however, to speculate as to the likely outcome of *future* events. This is not because such predictions are inherently less accurate than are assessments of how past events would have turned out if certain factors had been different. Rather, it is because a court asked to make predictive judgments often has the option of waiting to see what does in fact transpire before issuing a legal ruling. We do not suggest that the prospect of future injury can never be a sufficient basis for invoking the judicial power. Standing to seek review may be premised on " 'actual or threatened injury,' " *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982) (quoting *Gladstone, Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979)). Particularly where the likelihood of future harm is demonstrably high, it is often appropriate for courts to intervene before the feared event occurs. *See Wilderness Society v. Griles,* 824 F.2d 4, 10–12 (D.C.Cir.1987). Judicial review should not, however, be premised on the bare possibility that agency action may ultimately lead to cognizable injury.

## C. *Ripeness*

■ The legal concept of ripeness provides a framework for our resolution of the present dispute. The ripeness doctrine's basic rationale is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative

---

9. The Commission has consistently argued that Friends is not entitled to a municipal preference; its July 24, 1985 order, which rejected Friends' application and imposed the one-year ban, was plainly dependent on that premise. Although the petitioner's stance on this question has not been a model of clarity, we understand Friends to argue that its interests are sufficiently intertwined with those of the Village to entitle it to a municipal preference.

10. "When an agency relies on a number of findings, one or more of which are erroneous, we must reverse and remand only when there is a significant chance that but for the errors the agency might have reached a different result." *Salt River Project Agricultural Improvement and Power District v. United States,* 762 F.2d 1053, 1061 n. 8 (D.C.Cir.1985). *See also American Public Transit Association v. Lewis,* 655 F.2d 1272, 1278 (D.C.Cir.1981); *Consolidated Gas Supply Corp. v. FERC,* 606 F.2d 323, 329 (D.C. Cir.1979), *cert. denied,* 444 U.S. 1073, 100 S.Ct. 1018, 62 L.Ed.2d 755 (1980).

11. The Federal Rules provide that the errors of a trial court are harmless if they do not affect the "substantial rights" of the parties. *See* Fed. R.Civ.P. 61; Fed.R.Crim.P. 52(a). The standard implies a large discretionary role for appellate judges, *see McDonough Power Equipment, Inc. v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 78 L.Ed. 2d 663 (1984); *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946), but it is clear that an appellant is required to show far less than a certainty that the error changed the trial's result. Constitutional error in the criminal context requires reversal unless the error is harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967).

policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties. The problem is best seen in a twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). A determination of ripeness "requires the court to balance its interest in deciding the issue in a more concrete setting against the hardship to the parties caused by delaying review." *Webb v. Department of Health and Human Services*, 696 F.2d 101, 106 (D.C.Cir.1982). In the present case, we conclude that the proper course is to withhold adjudication.

In striking the balance between these interests, we must concede that the factors weighing against prompt adjudication are rather slight. There can be no question, for example, that the orders in question are "final agency action" within the meaning of 5 U.S.C. § 704.[12] It could hardly be contended that "further administrative action is needed to clarify the agency's position," *see Action Alliance of Senior Citizens v. Heckler*, 789 F.2d 931, 940 (D.C.Cir. 1986): the agency has made it abundantly clear that it has no intention of rethinking its prior decisions. The ripeness doctrine serves in part to allow an agency "full opportunity ... to correct errors or modify positions in the course of a proceeding," *see Public Citizen Health Research Group v. Commissioner, Food & Drug Administration*, 740 F.2d 21, 31 (D.C.Cir.1984). No purpose would be served by allowing the agency another opportunity to modify its position here.

Nor can it be said that the issues involved require further factual development if they are to be susceptible to judicial resolution. Determinations as to the reviewability and the propriety of the agency's prior orders would involve an examination of facts already in the record. The issues presented will grow no more "concrete" or less "abstract" with the passage of time. *See Abbott Laboratories*, 387 U.S. at 148, 87 S.Ct. at 1515.

The central judicial interest in deferring resolution of this question lies in the possibility that if the issue is not adjudicated at this time, it may not require adjudication at all. It is possible that Friends has lost interest in developing the Ausable River site, in which case our review of the Commission's prior decisions would have no real-world consequences.[13] It is perhaps more likely that Friends could receive a permit based upon a new application for a license or exemption. We would note again that, due to the dearth of available facts, the court has little basis for estimating the likelihood that the Commission's orders will exert a lasting impact on Friends' interests. We are not inclined to conduct our own exploration of the subject, and this uncertainty is a factor counseling hesitation. "It is not this court's job to ferret out or even to speculate as to possible impacts of possible outcomes of existing lawsuits upon future litigation; it is the petitioner's responsibility to show the specifics of the aggrievement alleged." *North Carolina Utilities Commission v. FERC*, 653 F.2d 655, 663 (D.C.Cir.1981).[14] If

---

**12.** FERC appears to concede that the challenged orders constitute final agency action, *see* Respondent's Br. at 16. And, given the agency's repeated refusal to revisit its prior decisions, we do not believe that finality is open to question.

**13.** Friends' pursuit of this litigation certainly suggests that it retains a desire to secure a permit for development of the site. On the other hand, since the cancellation of the CFS permit, Friends appears to have made no effort to file a new application or to ascertain whether competing applications have been submitted.

**14.** We deem it appropriate here to require that the petitioner demonstrate present injury, not that the Commission prove the absence thereof. When judicially cognizable injury is alleged, the burden of persuasion ordinarily falls on the party claiming that the dispute has become moot. *See Atlantic Richfield Co. v. U.S. Dept. of Energy*, 769 F.2d 771, 785 n. 92 (D.C.Cir.1984). As to the Commission's grant of the CFS permit —the focus of Friends' original claim—we believe that FERC has clearly met its burden. The injury petitioner now alleges—that it will enjoy a diminished chance of success in some future

Friends either abandons its development plans or obtains a permit based on a new application, judicial examination of the Commission's prior orders will be unnecessary. We may properly give weight to the interests in judicial economy that are furthered by the avoidance of unnecessary adjudication. *See State Farm Mutual Auto Insurance v. Dole*, 802 F.2d 474, 479 (D.C.Cir.1986), *cert. denied*, 480 U.S. 951, 107 S.Ct. 1616, 94 L.Ed.2d 800 (1987) ("[E]ven when agency action is final and the issues presented are purely legal, a court may nonetheless properly deem a matter unfit for resolution if ... resolution of the dispute is likely to prove unnecessary").

Even when (as here) the governmental interest in withholding adjudication is relatively slight, an issue may nevertheless be unripe if the petitioner's interest in immediate resolution is insignificant. "The second prong of the ripeness test requires that the contested action impose an impact on the parties 'sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage.'" *Alascom, Inc. v. FCC*, 727 F.2d 1212, 1217 (D.C.Cir.1984) (quoting *Abbott Laboratories*, 387 U.S. at 152, 87 S.Ct. at 1517). In *Abbott Laboratories*, the Supreme Court found that the challenged regulations imposed significant restrictions on the petitioner's primary conduct: the complainant was faced with a Hobson's choice between obeying the regulations (at considerable expense) and incurring the risks attendant upon noncompliance. Here, by contrast, the petitioner's present status will not be affected by our

refusal to adjudicate its claim. A decision in Friends' favor, requiring the Commission to treat the March 2, 1984 application as properly filed, would not obviate the need for agency evaluation of the merits of that application. And, even without judicial intervention, Friends may file a new application and thus preserve its eligibility for development rights to the Ausable River site.[15] Friends' current status will not be affected by our decision to grant or withhold adjudication: whatever our ruling, the petitioner must await the agency's assessment of its development application.

Friends argues persuasively that FERC's decision is more likely to be favorable if the agency is compelled to treat petitioner's application as filed on March 2, 1984. The claim is in essence that Friends *may* in the future be denied a benefit which it would have received had this court ruled in its favor. As noted earlier, however, Friends has provided the court with no basis for determining the likelihood of this occurrence. The prospect of future harm may justify adjudication if a sufficient probability of injury can be demonstrated. "The mere *potential* for future injury, however, is insufficient to render an issue ripe for review." *Alascom*, 727 F.2d at 1217 (emphasis in original). Petitioner's fear of future harm does not constitute an injury sufficiently concrete and immediate to warrant the invocation of judicial power.

█ A final consideration supports our unwillingness to adjudicate this matter at the present time. In determining whether a controversy is ripe, one relevant factor is

application process—is properly regarded not as a *continuation* of the old injury, but as a *new* injury stemming in part from the same underlying causes. Our application of ripeness doctrine to this new claim is unaffected by the fact that at some point in the past a live dispute existed between the parties.

The court in *Webb v. Department of Health and Human Services*, 696 F.2d 101 (D.C.Cir. 1982), took this approach. The plaintiff in *Webb* filed a FOIA request; the FDA denied the request, relying in part on 21 C.F.R. § 314.14. Webb then filed suit, seeking both the disclosure of the requested documents and the invalidation of section 314.14. Prior to trial, the requested information was released to Webb, and the demand for documents was thereby rendered

moot. Webb continued to seek invalidation of the challenged regulation, arguing that his future requests for information under FOIA would be prejudiced. The court dismissed that challenge as unripe, and its analysis clearly presumed that the fact of a prior live dispute did not shift the burden of persuasion as to the existence of current aggrievement.

15. The inconvenience of filing a new application is not itself a burden sufficient to justify adjudication if a case is otherwise unripe. *See Webb*, 696 F.2d at 107; *New York Stock Exchange, Inc. v. Bloom*, 562 F.2d 736, 742 (D.C. Cir.1977), *cert. denied*, 435 U.S. 942, 98 S.Ct. 1520, 55 L.Ed.2d 538 (1978).

the availability of judicial review at a later stage if the feared result does in fact materialize. *See Webb,* 696 F.2d at 107; *State Farm,* 802 F.2d at 481; *North Carolina Utilities Commission,* 653 F.2d at 663. In holding that petitioner's present injury is insignificant, we emphasize that any judicial relief to which Friends may be entitled is deferred but not denied. If the Ausable River permit is awarded to a competitor, that award will constitute final agency action and Friends may seek relief in court. In such a proceeding, Friends would be free to argue that the Commission erred by rejecting its March 2, 1984 application. We do not suggest that FERC's rejection of that application is necessarily reviewable.[16] We mean only that, if the agency's decision is reviewable, petitioner's interests will not be compromised by our refusal to review it now.

CONCLUSION

At the time this suit was filed, petitioner clearly alleged judicially cognizable injury, since the challenged agency action had led directly to a competitor's acquisition of a benefit which Friends desired. That claim, however, has been rendered moot by the cancellation of the CFS permit. Friends asserts that the agency's refusal to reconsider its order of July 24, 1985 continues to prejudice its interests, since Friends' chances of obtaining development rights to the Ausable River site would be improved if the Commission were compelled to treat its March 2, 1984 application as properly filed. While it may be that an earlier effective filing date would improve Friends' prospects, that fact alone does not make the dispute suitable for judicial resolution. The threat of future injury may warrant judicial intervention if a petitioner can dem-

onstrate a sufficient probability that the injury will in fact materialize. The mere *possibility* of future harm, however, does not constitute judicially cognizable injury, and the Commission's orders exert no significant present impact on the petitioner's rights and obligations. If the Commission's prior orders lead to renewed injury, the petitioner will have an opportunity to seek judicial relief at that time. The petition is accordingly dismissed.

---

**16.** Indeed, substantial authority indicates that the challenged orders might not be reviewable at all. *See ICC v. Brotherhood of Locomotive Engineers,* 482 U.S. 270, 107 S.Ct. 2360, 96 L.Ed. 2d 222 (1987) (ICC's denial of reconsideration is unreviewable). Although *Locomotive Engineers* involved another agency—one which, unlike FERC, is covered by the Hobbs Act—the principle announced appears to be of general applicability. *See John D. Copanos and Sons, Inc. v. Food and Drug Administration,* 854 F.2d 510,

527 (D.C.Cir.1988). The Commission, however, did not argue that its orders were unreviewable, contending instead that they should be reviewed under an abuse of discretion standard. *See* Respondent's Br. at 10. Since we have not had the benefit of briefing and argument concerning the applicability of *Locomotive Engineers,* and since the dispute is in any event not ripe for adjudication, we do not decide the question now.