# United States Court of Appeals

### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued May 10, 2005          Decided June 10, 2005

No. 04-1135

THE TOCA PRODUCERS, ET AL.,
PETITIONERS

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

SOUTHERN COMPANY SERVICES, INC., ET AL.,
INTERVENORS

———

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

———

*Katherine B. Edwards* argued the cause for petitioners. With her on the briefs were *John Paul Floom, Frederick T. Kolb*, and *Charles J. McClees*.

*David H. Coffman*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *Cynthia A. Marlette*, General Counsel, and *Dennis Lane*, Solicitor.

*Patrick B. Pope*, *R. David Hendrickson*, *Roy R. Robertson, Jr.*, *Jeffrey D. Komarow*, and *Joshua L. Menter* were on the brief

for intervenors Southern Natural Gas Company, et al.

Before: GINSBURG, *Chief Judge*, and SENTELLE and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*:  Several natural gas producers petition for review of three orders of the Federal Energy Regulatory Commission denying their request, pursuant to §§ 4 and 5 of the Natural Gas Act, 15 U.S.C. §§ 717c, 717d(a), that Southern Natural Gas Co. be ordered to revise its tariff to include a safe harbor gas quality standard that specifies a hydrocarbon dewpoint at which Southern will guarantee the transportation of gas.  Because the producers may yet secure that very relief in a proceeding now pending before the Commission, we dismiss the present petition as unripe.

## I. Background

The producers operate upstream from three natural gas processing plants located near Toca, Louisiana and owned in part by affiliates of some of the producers.  All the producers tender to Southern's pipeline, at receipt points also upstream of the plants, gas with a relatively high liquefiable hydrocarbon content.  A natural gas stream with a high content of liquefiable hydrocarbons, however, threatens the reliable operation of a pipeline.  For that reason § 3.1(b) of Southern's tariff provides that Southern will not accept gas containing more than 0.3 gallons per thousand cubic feet of isopentane and heavier hydrocarbons.

Ordinarily § 3.1(b) is of no consequence because it is in the producers' economic interest to extract hydrocarbons at the

processing plants for the purpose of selling them as liquid natural gas. Accordingly, Southern typically waives enforcement of the tariff provision at the producers' receipt points, relying upon processing at the plants downstream to render the gas compliant.

In December 2000, however, the price of natural gas rose to a level at which the producers found it more profitable to leave the hydrocarbons in their gas than to extract and sell them because hydrocarbons raise the heat content, and hence the value, of the gas. The operators of the processing plants at Toca therefore informed Southern they would shut down the plants by the end of the month. Concerned about the effect upon the reliability of its pipeline, Southern notified all producers that:

> In the event the processing capacity is reduced significantly ... Southern may commence enforcement of Section 3.1(b) .... Individual producers that do not meet the quality specification will be ... required to reduce or shut-in their production.

On January 5, 2001 the producers petitioned the Commission for a temporary restraining order to prevent Southern from refusing their gas and requested that an emergency technical conference be held. The Commission did not issue a temporary restraining order but it did convene the requested conference. *Amoco Prod. Co.*, 94 F.E.R.C. ¶ 61,026 (2001). Neither the conference nor subsequent settlement discussions, however, resolved the producers' concerns. In May 2003 the Commission directed the parties to identify outstanding issues and their positions thereon. *Amoco Prod. Co.*, 103 F.E.R.C. ¶ 61,175 (2003).

The producers responded by filing a complaint before the Commission, asserting Southern's threatened refusal to accept their gas was discriminatory within the meaning of §§ 4 and 5 because, at receipt points downstream from the processing plants, it had accepted gas with a higher liquefiable hydrocarbon concentration than gas processed at the Toca plants. The producers claimed such discrimination arose because there was no safe harbor gas quality specification standard in Southern's tariff, and asked that Southern's tariff be revised accordingly. To that end they requested an evidentiary hearing.

The Commission dismissed the producers' complaint as well as their earlier petition. *Toca Producers v. S. Natural Gas Co.*, 104 F.E.R.C. ¶ 61,300 (2003). Section 4, explained the Commission, applies only to a tariff change initiated by a pipeline. *Id.* at 62,130. As for § 5, the Commission held the producers had not carried their "substantial burden" of showing Southern's tariff was "unjust and unreasonable," *id.*, and because they had adduced "no genuine issues of material fact" on that score, the Commission declined to hold an evidentiary hearing, *id.* at 62,129-62,130. The Commission did, however, condition its dismissal of the producers' complaint upon Southern's making a § 4 filing to include in its tariff an "aggregation methodology, including [a] flexible [gas quality specification] standard." *Id.* at 62,128, 62,130.

Southern duly filed a proposal to revise its tariff, *see S. Natural Gas Co.*, 105 F.E.R.C. ¶ 61,254 (2003) (Docket No. RP04-42-00), and that proceeding, in which the producers have intervened, is still pending. Meanwhile, the Commission denied both the producers' petition for rehearing, *see* 106 F.E.R.C. ¶ 61,158 (2004), and their subsequent motion for clarification or rehearing, *see* 107 F.E.R.C. ¶ 61,009 (2004), and the producers petitioned this court for review of all three of the Commission's

5

orders.

## II.   Analysis

Before addressing the merits of the producers' petition we must be satisfied it meets the requirements of a "Case" or a "Controversy" within the meaning of Article III of the Constitution of the United States, *see Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998), including the requirement that their claim be ripe for judicial resolution, *see Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 807-08 (2003).  To that end, we must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967).  "In applying the ripeness doctrine to agency action we balance the interests of the court and the agency in delaying review against the petitioner's interest in prompt consideration of allegedly unlawful agency action." *Fed. Express Corp. v. Mineta*, 373 F.3d 112, 118 (D.C. Cir. 2004); *Friends of Keeseville, Inc. v. FERC*, 859 F.2d 230, 235 (D.C. Cir. 1988).  Balancing those interests here, we conclude the producers' petition is not ripe for review.[*]

---

[*] We note the "[r]ipeness doctrine is responsive to constitutional as well as prudential considerations," *Action Alliance of Senior Citizens of Greater Phila. v. Heckler*, 789 F.2d 931, 940 n.12 (D.C. Cir. 1986), but we need not decide which type of consideration predominates here.  The Supreme Court has said the prudential standing doctrine, like the abstention doctrine, "represents the sort of 'threshold question' [that] may be resolved before addressing jurisdiction," *Tenet v. Doe*, 125 S. Ct. 1230, 1234 n.4 (2005), and we infer that, because the ripeness requirement, even in its prudential aspect, likewise calls for a threshold inquiry that does not involve an adjudication on the merits, it likewise may be resolved without first addressing whether the producers have Article III standing.  *See*

The interests of the court and of the agency in withholding judicial review ordinarily depend upon "the fitness of the issues for judicial decision," *Abbott Labs.*, 387 U.S. at 149, which, in turn, depends upon whether the issues are "purely legal," whether their consideration "would benefit from a more concrete setting, and whether the agency's action is sufficiently final." *Atl. States Legal Found. v. EPA*, 325 F.3d 281, 284 (D.C. Cir. 2003). Here the gravamen of the producers' petition – that Southern's tariff is unjust and unreasonable – presents a "purely legal" issue, and it arises from a "concrete setting." The challenged orders also appear to present a "final agency action" within the meaning of the Administrative Procedure Act, 5 U.S.C. § 704, but in the peculiar circumstances of this case we do not think the agency's action is "sufficiently final."

The Commission has yet to pass conclusively upon whether the producers are entitled to the only relief they now seek, namely, that Southern's tariff be revised to include an objective gas quality specification standard. As the Commission portrays the situation in its brief – and the producers do not disagree – "[t]he proceeding in FERC Docket No. RP04-02 could result in a tariff modification that [the producers] seek, thus resolving the issues raised in this appeal." There is therefore a substantial "judicial interest in deferring resolution" of the petition because, if the producers' entitlement to such a standard is not presently adjudicated, then it "may not require adjudication at all." *Friends of Keeseville*, 859 F.2d at 235; *see also Wyo. Outdoor Council v. U.S. Forest Serv.*, 165 F.3d 43, 50 (D.C. Cir. 1999) ("Prudence ... restrains courts from hastily intervening into matters that may best be reviewed at another time or another

*Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits").

setting"). If the producers do not get the relief they seek in the proceeding now before the Commission, then they may, of course, seek judicial review of the final order issued in that docket. *See Friends of Keeseville*, 859 F.2d at 236-37 ("In determining whether a controversy is ripe, one relevant factor is the availability of judicial review at a later stage"). Staying our hand until the conclusion of the ongoing administrative proceeding could therefore avoid a "piecemeal, duplicative, tactical and unnecessary appeal[] which [is] costly to the parties and consume[s] limited judicial resources." *Mount Wilson FM Broad., Inc. v. FCC*, 884 F.2d 1462, 1467 (D.C. Cir. 1989); *see also Friends of Keeseville*, 859 F.2d at 236 (court "may properly give weight to the interests in judicial economy that are furthered by the avoidance of unnecessary adjudication").

The institutional interest in deferring a judicial resolution must, of course, be weighed against "the hardship to the parties of withholding court consideration" at this time. *Abbott Labs.*, 387 U.S. at 149. The producers, however, have not shown they will endure any cognizable hardship at all. They do say they "will continue to be injured because there is no certainty with regard to ... their processing obligations" under Southern's tariff, but the Supreme Court has squarely rejected the proposition that "uncertainty as to the validity of a legal rule constitutes a hardship for purposes of the ripeness analysis"; were it otherwise "courts would soon be overwhelmed with requests for what essentially would be advisory opinions because most business transactions could be priced more accurately if even a small portion of existing legal uncertainties were resolved." *Nat'l Park Hospitality Ass'n*, 538 U.S. at 811.

The producers belatedly (that is, in their reply brief) claim "[t]here is a significant risk that FERC will rely on its findings in the [orders under review] to deny [the producers'] arguments

in the [pending] case or other future cases." We do not ordinarily notice an argument first raised in a reply brief because the other side had no opportunity to respond in its brief, *see Amgen, Inc. v. Smith*, 357 F.3d 103, 117 (D.C. Cir. 2004), and we have no cause to make an exception here. In any event, we doubt the producers' bald assertion regarding the possibility the orders will be given preclusive effect would carry their burden of showing the issue in this case is ripe. *See Friends of Keeseville*, 859 F.2d at 235 ("It is not this court's job ... to speculate as to possible impacts of possible outcomes of existing lawsuits upon future litigation; it is the petitioner's responsibility to show the specifics of the aggrievement alleged").

In sum, because the public interest in judicial economy counsels against our now considering the producers' petition, and because the producers have pointed to no hardship from waiting until the administrative process has run its course, we hold their petition is not ripe for review.

## III. Conclusion

For the foregoing reasons, the producers' petition for review is

*Dismissed*.