# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued January 26, 2009         Decided April 28, 2009

No. 08-1071

NATIONAL TELEPHONE COOPERATIVE ASSOCIATION,
PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION AND UNITED
STATES OF AMERICA,
RESPONDENTS

QWEST COMMUNICATIONS CORPORATION, ET AL.,
INTERVENORS

———

On Petition for Review of an Order
of the Federal Communications Commission

———

*L. Marie Guillory* argued the cause for petitioner. With her on the briefs were *Daniel Mitchell*, *Jill Canfield*, and *Karlen J. Reed*.

*Joel Marcus*, Counsel, Federal Communications Commission, argued the cause for respondent. With him on the brief were *Thomas O. Barnett*, Assistant Attorney General, U.S. Department of Justice, *Catherine G. O'Sullivan* and *Nancy C. Garrison*, Attorneys, *Matthew B. Berry*, General Counsel, Federal Communications Commission,

*Joseph R. Palmore*, Deputy General Counsel, and *Richard K. Welch*, Acting Deputy Associate General Counsel.

Before: GINSBURG, GARLAND and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: The Regulatory Flexibility Act requires an agency issuing a final rule to publish an analysis of the rule's impact on small businesses.[1]

---

[1] Section 604 of Title 5 reads in full:

(a) When an agency promulgates a final rule under section 553 of this title, after being required by that section or any other law to publish a general notice of proposed rulemaking, or promulgates a final interpretative rule involving the internal revenue laws of the United States as described in section 603(a), the agency shall prepare a final regulatory flexibility analysis. Each final regulatory flexibility analysis shall contain—
　　(1) a succinct statement of the need for, and objectives of, the rule;
　　(2) a summary of the significant issues raised by the public comments in response to the initial regulatory flexibility analysis, a summary of the assessment of the agency of such issues, and a statement of any changes made in the proposed rule as a result of such comments;
　　(3) a description of and an estimate of the number of small entities to which the rule will apply or an explanation of why no such estimate is available;
　　(4) a description of the projected reporting, recordkeeping and other compliance requirements of the rule, including an estimate of the classes of small entities which will be subject to the requirement and the type of

In 2005, we stayed and remanded a Federal Communications Commission order because the agency had failed to publish the required analysis. *U.S. Telecom Ass'n v. FCC*, 400 F.3d 29, 42-43 (D.C. Cir. 2005). The FCC has now issued the analysis, but the National Telecommunications Cooperative Association challenges it as inconsistent with the Regulatory Flexibility Act and arbitrary and capricious under the Administrative Procedure Act. We deny NTCA's petition for review.

I

This case concerns "number portability" – the ability of telephone customers to keep a telephone number after switching service providers. In 1996, the Federal Communications Commission issued an order requiring "local exchange carriers" – that is, companies that provide telephone service, *see* 47 U.S.C. § 153(26) – to ensure number portability to persons changing carriers but remaining in the same physical location. So, for example, someone switching

---

professional skills necessary for preparation of the report or record; and

(5) a description of the steps the agency has taken to minimize the significant economic impact on small entities consistent with the stated objectives of applicable statutes, including a statement of the factual, policy, and legal reasons for selecting the alternative adopted in the final rule and why each one of the other significant alternatives to the rule considered by the agency which affect the impact on small entities was rejected.

(b) The agency shall make copies of the final regulatory flexibility analysis available to members of the public and shall publish in the Federal Register such analysis or a summary thereof.

between two local telephone service providers can keep the same home telephone number. That requirement facilitates competition among wireline carriers by eliminating the inconvenience of having to switch numbers when changing carriers.

In 2003, the FCC issued a second order requiring local exchange carriers to port numbers to *wireless* carriers providing service in the same area. That new requirement – known as "intermodal portability" – means that local wireline carriers have to route telephone calls to wireless carriers. To accomplish this, local exchange carriers must transmit wireline telephone signals to what is known as a "point of interconnection" – a point where wireline signals are converted into wireless signals. Points of interconnection are sometimes far from local exchange carriers, however, and local exchange carriers must bear certain costs in routing signals over those distances.

Local exchange carriers challenged the FCC's Order on intermodal portability. They argued, among other things, that the FCC had violated the Regulatory Flexibility Act, which directs agencies to publish an analysis of how a rule will affect small businesses. *See* 5 U.S.C. § 604. The FCC responded that the Order in question was exempt from the Act because it constituted an interpretive rule. In 2005, this Court concluded that the intermodal portability Order was not exempt from the Act's requirements; we found that the Order was a legislative rule. We therefore granted the local exchange carriers' petitions for review with respect to their Regulatory Flexibility Act claim, stayed the intermodal portability Order until the FCC supplied the required regulatory flexibility analysis, and remanded the matter to the FCC. *U.S. Telecom Ass'n v. FCC*, 400 F.3d 29, 43 (D.C. Cir. 2005).

In 2008, the FCC published the analysis required by the Regulatory Flexibility Act, and the stay on enforcement of the intermodal portability Order accordingly expired. Now the National Telecommunications Cooperative Association – an association of rural telephone companies, *see* 47 U.S.C. § 153(37) – challenges the Final Regulatory Flexibility Analysis that the FCC issued on remand. Citing the Order's effects on small businesses, NTCA argues that the FCC violated the Regulatory Flexibility Act and the Administrative Procedure Act.

II

A

The Regulatory Flexibility Act requires that agencies issuing rules under the Administrative Procedure Act publish a final regulatory flexibility analysis. *See* 5 U.S.C. § 604. Such an analysis must meet certain statutory requirements. It must state the purpose of the relevant rule and the estimated number of small businesses that the rule will affect, if such an estimate is available. In addition, each analysis must summarize comments filed in response to the agency's initial regulatory flexibility analysis, along with the agency's assessment of those comments. Finally, each analysis must include "a description of the steps the agency has taken to minimize the significant economic impact" that its rule will have on small businesses, "including a statement of the factual, policy, and legal reasons for selecting the alternative adopted in the final rule and why each one of the other significant alternatives to the rule considered by the agency which affect the impact on small entities was rejected." § 604(a)(5).

According to NTCA, the analysis issued by the FCC does not comply with the Regulatory Flexibility Act. We disagree. As we have previously recognized, the Act's requirements are "[p]urely procedural." *U.S. Cellular Corp. v. FCC*, 254 F.3d 78, 88 (D.C. Cir. 2001); *see also Aeronautical Repair Station Ass'n, Inc. v. FAA*, 494 F.3d 161, 178 (D.C. Cir. 2007) ("The RFA is a procedural statute setting out precise, specific steps an agency must take."). Though it directs agencies to state, summarize, and describe, the Act in and of itself imposes no substantive constraint on agency decisionmaking. In effect, therefore, the Act requires agencies to publish analyses that address certain legally delineated topics. Because the analysis at issue here undoubtedly addressed all of the legally mandated subject areas, it complies with the Act. *Cf. U.S. Cellular Corp.*, 254 F.3d at 88-89 ("Petitioners dispute neither that the Commission included a FRFA [final regulatory flexibility analysis] . . . nor that this statement addresses all subjects required by the RFA.").

B

NTCA also raises a related but distinct claim that the FCC's action is arbitrary and capricious under the APA because the agency did not reasonably address the Order's impact on small businesses.

The APA's arbitrary-and-capricious standard requires that agency rules be reasonable and reasonably explained. Under *State Farm*, we must assess, among other things, whether the agency decision was based on "consideration of the relevant factors." *Motor Vehicle Mfrs. Ass'n, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (internal quotation marks omitted). The Regulatory Flexibility Act makes the interests of small businesses a "relevant factor" for certain rules. Therefore, the APA together with the

Regulatory Flexibility Act require that a rule's impact on small businesses be reasonable and reasonably explained. A regulatory flexibility analysis is, for APA purposes, part of an agency's explanation for its rule. *See Small Refiner Lead Phase-Down Task Force v. EPA*, 705 F.2d 506, 539 (D.C. Cir. 1983) ("a reviewing court should consider the regulatory flexibility analysis as part of its overall judgment whether a rule is reasonable"); *see also Thompson v. Clark*, 741 F.2d 401, 405 (D.C. Cir. 1984) ("Thus, if data in the regulatory flexibility analysis – or data anywhere else in the rulemaking record – demonstrates that the rule constitutes such an unreasonable assessment of social costs and benefits as to be arbitrary and capricious, the rule cannot stand.") (citation omitted).

As we have said many times before, arbitrary-and-capricious review in agency rulemaking cases is highly deferential. *See City of Portland, Oregon v. EPA*, 507 F.3d 706, 713 (D.C. Cir. 2007); *AT&T Corp. v. FCC*, 448 F.3d 426, 431 (D.C. Cir. 2006). In assessing whether a rule is reasonable and reasonably explained, our review is "narrow," and we must not "substitute [our] judgment for that of the agency." *State Farm*, 463 U.S. at 43. That is particularly true with regard to an agency's predictive judgments about the likely economic effects of a rule. *See Teledesic LLC v. FCC*, 275 F.3d 75, 84 (D.C. Cir. 2001).

In this case, NTCA raises four specific objections to the FCC's regulatory flexibility analysis, which we consider in turn.

*First*, NTCA contends that the intermodal portability Order causes small businesses to incur unreasonably high implementation costs. But the FCC found "scant support" for the implementation cost estimates offered by some

commentators. *In re Telephone Number Requirements for IP-Enabled Services Providers*, 22 F.C.C.R. 19531, 19607 ¶ 5, 2007 WL 3306343 (2007). The agency noted, moreover, that the estimates would not impose "a significant economic burden on small entities," even if they were "taken at face value." *Id*. at 19606-07 ¶ 5. The FCC concluded that its chosen approach "best balances the impact of the costs that may be associated with the wireline-to-wireless intermodal porting rules for small carriers and the public interest benefits of those requirements." *Id*. at 19610 ¶ 13. Although the FCC's explanation of implementation costs was not elaborate, we find its consideration of those costs reasonable and reasonably explained in light of the record in this case. *See In re Core Communications, Inc.*, 455 F.3d 267, 279 (D.C. Cir. 2006); *United Parcel Service, Inc. v. U.S. Postal Service*, 184 F.3d 827, 839-40 (D.C. Cir. 1999).

*Second*, according to NTCA, the FCC's intermodal portability Order also burdens small businesses with significant and disproportionate transport costs – that is, costs incurred by routing a telephone call from one carrier to another.[2] The agency here pointed out that any problems associated with transport costs are not unique to intermodal porting; the agency said it therefore would address the issue comprehensively rather than piecemeal. The FCC is now considering transport costs in a separate rulemaking proceeding, the intercarrier compensation proceeding. Because this Order is not the source of the transport costs problem, and because the FCC is already performing the

---

[2] Contrary to the FCC's suggestion, NTCA's transport costs argument is not an untimely challenge to the merits of the FCC's underlying Order. *Cf. Cellular Telecomms. & Internet Ass'n v. FCC*, 330 F.3d 502, 508 (D.C. Cir. 2003). NTCA has timely challenged the reasonableness of the regulatory flexibility analysis after our remand in *United States Telecom Ass'n*, 400 F.3d at 43.

review of transport cost issues that NTCA asks us to mandate, NTCA's opposition is misplaced and should be raised in the intercarrier compensation proceeding. We reached the same conclusion under similar circumstances in *Central Texas Telephone Co-op., Inc. v. FCC*, 402 F.3d 205 (D.C. Cir. 2005). There, in a case involving number portability, we found no APA violation where the FCC similarly postponed consideration of transport cost issues that had already been "raised . . . in other proceedings" – namely, in the intercarrier compensation proceeding. *Id*. at 215 (internal quotation marks omitted); *see also Toca Producers v. FERC*, 411 F.3d 262, 264 (D.C. Cir. 2005) (dismissing petition as unripe where petitioner may obtain its requested remedy "in a proceeding now pending before the Commission"); *U.S. Air Tour Ass'n. v. FAA*, 298 F.3d 997, 1010-11 (D.C. Cir. 2002) (agency "reasonably put off" consideration in RFA case where it represented that it would address the matter in future rulemaking).

As NTCA points out, the separate intercarrier compensation proceeding has been pending for several years. We assume the Commission will complete its work soon. If not, an appropriate party may of course file a petition for mandamus. *Cf. In re Core Communications, Inc.*, 531 F.3d 849 (D.C. Cir. 2008); *Telecomm. Research & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984).

*Third*, NTCA argues that the FCC should have imposed additional mitigating measures to lighten the burden of the Order on small businesses. We have limited capacity or capability to second-guess how an agency weighs a rule's possible impact on small businesses against other statutory objectives. We similarly have limited ability to dispute an agency's assessment of how best to minimize a rule's impact on small businesses. Those are precisely the type of issues

that rest "within the expertise" of the FCC "and upon which a reviewing court must be most hesitant to intrude." *State Farm*, 463 U.S. at 53. In this case, given the FCC's reasonable determinations that the intermodal portability Order (i) fulfilled statutory objectives by advancing both competition and the interests of consumers and (ii) would not impose significant implementation costs on small businesses, the FCC reasonably concluded that mitigating measures were unnecessary. *See In re Telephone Number Requirements*, 22 F.C.C.R. at 19606-07 ¶ 5, 19611 ¶ 16.

*Fourth*, NTCA alleges that the FCC inadequately addressed alternative policy options. Courts may not "broadly require an agency to consider all policy alternatives in reaching [a] decision." *State Farm*, 463 U.S. at 51. Here, NTCA says the FCC could have either (i) issued a temporary stay of the intermodal porting requirements for small wireline carriers until the conclusion of the intercarrier compensation proceeding or (ii) limited the scope of the intermodal portability requirement so that wireline carriers would have to port only to wireless carriers with nearby points of interconnection. The FCC, however, persuasively explained that such approaches would have the effect of denying many wireline consumers "the benefit of being able to port their numbers to wireless carriers." *In re Telephone Number Requirements*, 22 F.C.C.R. at 19610 ¶ 14. In addition, NTCA suggests that the agency could have created "a partial or blanket exemption from the wireline-to-wireless intermodal porting requirements for small entities." *Id.* at 19611 ¶ 16. But the FCC rejected such exemptions on the ground that they would discourage competition and "would harm consumers in small and rural areas across the country by preventing them from being able to port on a permanent basis." *Id.* The agency's rejection of these alternative approaches was both reasonable and reasonably explained.

11

\* \* \*

We deny the petition for review.

*So ordered.*