# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued February 8, 2017          Decided March 24, 2017

No. 15-1497

NATIONAL ASSOCIATION OF REGULATORY UTILITY
COMMISSIONERS,
PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION AND UNITED
STATES OF AMERICA,
RESPONDENTS

VONAGE HOLDINGS CORPORATION,
INTERVENOR

On Petition for Review of an Order of
the Federal Communications Commission

*James Bradford Ramsay* argued the cause for petitioner. With him on the briefs was *Jennifer Murphy*.

*Matthew J. Dunne*, Counsel, Federal Communications Commission, argued the cause for respondents. With him on the briefs were *Robert B. Nicholson* and *Sean Sandoloski*, Attorneys, U.S. Department of Justice, *Jonathan B. Sallet*, General Counsel, Federal Communications Commission, *David M. Gossett*, Deputy General Counsel, and *Richard K. Welch*, Deputy Associate General Counsel. *Jacob M. Lewis*, Associate

General Counsel, Federal Communications Commission, entered an appearance.

*Elizabeth A. Bonner* argued the cause for intervenor. With her on the brief was *Brita D. Strandberg*.

Before: GARLAND, *Chief Judge*, and HENDERSON and ROGERS, *Circuit Judges*.

PER CURIAM: This petition challenges the Order of the Federal Communications Commission authorizing interconnected Voice-over-Internet-Protocol service providers ("I-VoIPs") to obtain North American Numbering Plan telephone numbers directly from the Numbering Administrators rather than through intermediary local phone service numbering partners. *Numbering Policies for Modern Communications*, 30 FCC Rcd. 6839 (2015) ("Order"). The National Association of Regulatory Utility Commissioners ("NARUC") challenges the Order, contending that the Commission has effectively classified I-VoIP service as a Title II telecommunications service, or acted arbitrarily by delaying a classification decision or by extending Title II rights and obligations to I-VoIPs in the absence of classification. Because NARUC fails to show that it has standing to challenge the Order, the court lacks jurisdiction and the petition is dismissed.

## I.

The Communications Act, as amended by the Telecommunications Act of 1996, defines two mutually exclusive categories of communication services: "telecommunications service" and "information service." 47 U.S.C. § 153(24), (53). Providers of telecommunications service are subject to regulation as common carriers under Title II of the Act, *id.* § 153(51), while information services are not.

*See Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 974 (2005).

Prior to the challenged Order, the Commission's regulations required "an entity requesting numbering resources to demonstrate that it is 'authorized' to provide service in the area for which it is requesting telephone numbers." Order ¶ 20. The entity had to produce "evidence of either a state certificate of public convenience and necessity [ ] or a Commission license." *Id.* ¶ 4. Absent such evidence, I-VoIPs had to "partner with a carrier," usually a local exchange carrier ("LEC"), and pay that carrier a Primary Rate Interface service fee in order to get telephone numbers. *Id.* ¶¶ 17 n. 54, 69. In 2004, the Commission issued a notice of proposed rulemaking to classify VoIP, among others, as a "telecommunications service," *In re IP-Enabled Services*, WC Docket No. 04–36, 19 FCC Rcd. 4863 (2004), but had taken no further action in that separate proceeding when the challenged Order was issued.

In 2005, the Commission began granting waivers of its rules to permit I-VoIPs, including Vonage Holdings Corporation, to "obtain numbers directly from the Numbering Administrators" without a carrier partner. Order ¶ 4. I-VoIPs that received direct number access through waivers had to "process[] port requests directly rather than going through a LEC." *In re Administration of the North American Numbering Plan*, 20 FCC Rcd. 2957, 2962 (2005), at ¶ 9. For I-VoIPs that did not receive waivers, the regulations, beginning in 2007, imposed portability requirements where "both an interconnected VoIP provider and its numbering partner [ ] facilitate a customer's porting request to or from an interconnected VoIP provider." *In re Telephone Number Requirements for IP-Enabled Service Providers,* 22 FCC Rcd. 19531, 19532, 19548–49 (2007), at ¶¶ 1, 30, 31, 32, *aff'd Nat'l Tel. Coop. Ass'n v. FCC*, 563 F.3d 536 (D.C. Cir. 2009).

4

The Order revised the regulations to allow I-VoIPs, without state certification, to "obtain telephone numbers directly from the Numbering Administrators, subject to several conditions designed to minimize number exhaust and preserve the integrity of the numbering system." Order App. C ¶ 3. Following a six-month trial period that demonstrated "there are no technical barriers preventing interconnected VoIP providers from accessing numbering resources directly," Order ¶ 4, the Commission concluded direct access would "facilitate innovative technologies and services that will benefit both consumers and providers, and further the Commission's recognized pro-consumer, pro-competition, and public safety goals," *id.* ¶ 2. The Commission thereby allowed number access "directly to interconnected VoIP providers, without regard to whether they are [common] carriers," *id.* ¶ 78, noting that it had yet to classify "interconnected VoIP services as either telecommunications services or information services," *id.* ¶ 79 n. 282. The revised regulations continued to ensure that users of I-VoIP services would obtain the benefits of local number portability, regardless of whether the I-VoIP provider obtained numbers directly or through a carrier partner. *Id.* ¶ 55.

The Commission rejected NARUC's argument that its exclusive authority over numbering under 47 U.S.C. § 251(e)(1), is limited by provisions imposing number portability and cost recovery obligations on "telecommunications carriers." *See* 47 U.S.C. §§ 251(b) & (e), 153(37) & (51). It interpreted these provisions to set a statutory floor that did not limit the Commission's authority to extend numbering requirements to other service providers. *See* Order ¶¶ 79–82.

NARUC petitions for review of the Order.

## II.

As a threshold matter, the Commission and Vonage Holdings Corporation maintain that NARUC members lack standing under Article III of the Constitution to challenge the Order because NARUC has failed to show its members suffered any injury-in-fact as a result of the Order. In the Commission's view, NARUC members were not harmed by the Order and any harm stems from the Commission's failure to date to classify VoIP services as a "telecommunications service, subject to Title II common carriage regulation." Resp't's Br. 22. Vonage Holdings Corporation, in turn, argues that the Order does not change the rights or responsibilities of NARUC members but maintains the *status quo ante* authority of the state commissions to regulate VoIPs. Intervenor's Br. 17–18.

"[A]n association has standing to bring suit on behalf of its members when [ ] its members would otherwise have standing to sue in their own right; [ ] the interests it seeks to protect are germane to [its] purpose; and [ ] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1289 (D.C. Cir. 2007). So, to establish standing under Article III, NARUC must demonstrate that: (1) at least one of its members was injured in fact, meaning an "actual or imminent, not conjectural or hypothetical" injury; (2) the injury was caused by the Order; and (3) the court can redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted). Where, as here, NARUC members are not directly regulated by the challenged agency action, standing is "substantially more difficult to establish." *Id.* at 562; *see Pub. Citizen, Inc.*, 489 F.3d at 1279. Furthermore, "[b]are allegations are insufficient [ ] to establish a petitioner's standing," and where that standing

is not self-evident, the petitioner in its opening brief "must support each element of its claim to standing by affidavit or other evidence." *Sierra Club v. EPA*, 292 F.3d 895, 898, 899 (D.C. Cir. 2002) (quotation omitted); Scheduling Order 2 (Feb. 24, 2016) (citing D.C. Cir. Rule 28(a)(7)). Although the court *sua sponte* may seek supplemental submissions to satisfy itself that the petitioner has Article III standing, *see American Library Association v. FCC*, 401 F.3d 489, 494 (D.C. Cir. 2005), no supplemental submission is needed here.

Although NARUC bears the "burden of proof . . . to show a substantial probability that it has been injured," *Sierra Club*, 292 F.3d at 899 (quotation omitted), NARUC does not address standing in its opening brief beyond a single sentence, asserting without elaboration that "the Order undermines its members' authority directly and indirectly." Pet'r's Br. 17. In its Reply Brief, NARUC states standing is "evident" from its opening brief, Reply Br. 12, because the Order "impacted" state commissions' ability to carry out "tasks central to a federal scheme," *id.* at 15. Essentially, then, NARUC maintains its standing is self-evident and consequently it is relieved of the obligation of present affidavits or other evidence in support of standing. *See Sierra Club,* 292 F.3d at 899. NARUC offers two theories of standing in its Reply Brief but neither is persuasive, and its standing is not self-evident.

First, NARUC maintains that the Commission's actions injure its members' "designated role in Congress['s] plan," Reply Br. 19, by allowing I-VoIP service providers to obtain telephone numbers without being classified as "telecommunications carriers," Pet'r's Br. 33. This failure to classify I-VoIPs, NARUC suggests, denies states certain regulatory authority that applies only to telecommunications carriers. Yet NARUC does not challenge the I-VoIP's ability to obtain numbers directly. Instead, it maintains that the Order has

the effect of classifying I-VoIPs as a Title II telecommunications service and this court should either confirm that fact, *see* Pet'r's Br. 17–33, or vacate the Order and remand this matter to require the Commission to so classify I-VoIPs by a date certain, *see id.* at 62. It is undisputed that if the Commission had so classified I-VoIP service providers they would have direct access to numbers and number portability rights and obligations. *See* Order ¶ 4; Pet'r's Br. 39. Consequently, NARUC has shown no injury-in-fact that is caused by the Order, but at most only harm as a result of the legal route and rationale the Commission used to reach its result. Because NARUC has not demonstrated it was "adversely affected by the Commission's holding," its objection to the Order's underlying rationale is not the kind of harm that generally constitutes injury-in-fact. *Int'l Bhd. of Elec. Workers v. Interstate Commerce Comm'n*, 862 F.2d 330, 334 (D.C. Cir. 1988); *cf. Telecomm. Research & Action Ctr. v. FCC*, 917 F.2d 585, 588 (D.C. Cir. 1990).

Moreover, although NARUC asserts the Order diminishes its members' regulatory authority, it never ties that claimed harm to the regulatory changes made in the Order. Specifically, NARUC states that I-VoIP's "unresolved [classification] status" undercuts its members' authority to "arbitrate interconnection disputes between *telecommunications carriers*," Pet'r's Br. 13; Reply Br. 14 n. 4 (citing 47 U.S.C. § 252) (emphasis in original), and to protect "customers of *telecommunications services*," Pet'r's Br. 9 n. 11 (citing 47 U.S.C. § 253) (emphasis in original). The Order addresses only direct number access and enhanced portability, leaving undisturbed the Commission's separate classification proceeding. Order ¶ 79 n. 282. "Because this Order is not the source" of the harm arising from the Commission's classification delay, NARUC's claim of injury is misdirected. *Cf. Nat'l Tel. Coop. Ass'n v. FCC*, 563 F.3d 536, 541–42 (D.C. Cir. 2009). Absent affidavits or other supporting evidence, NARUC fails to explain how it suffers a concrete,

particularized injury simply because I-VoIPs are not yet classified by the Commission. NARUC identifies no state authority that depends on whether interconnected VoIP is *classified by* the Commission as a telecommunications service; instead, all the statutory provisions NARUC invokes depend on whether I-VoIP *is* a telecommunications service. *See, e.g.*, Pet'r's Br. 13 (citing 47 U.S.C. §§ 252, 253(b)). Under NARUC's view that "I-VoIP is a [t]elecommunications [s]ervice," Pet'r's Br. 28, the states can already exercise those statutory powers. NARUC fails to explain what additional concrete benefit the Commission classification would provide to states. Therefore, NARUC fails to identify a concrete harm inflicted by the Order's inaction on classification.

Second, NARUC maintains its members are injured by the "*Order's raison d'etre* — which is to permit I-VoIP providers the option to bypass either becoming State-certified or dealing with a State-certified carrier." Reply Br. 12 (citing Order ¶ 21). It maintains that its members suffered an injury because "the Order substitutes a necessarily less direct and arguably more burdensome procedure for States" to carry out their role in "actively polic[ing] utilization (to avoid State area code exhaustions)." Reply Br. 13; *see* Oral Arg. Tape 6:15–6:50; 9:28–9:40. The Commission has delegated to state commissions the authority to "resolve matters involving the introduction of new area codes within their states," which includes "[d]irecting whether area code relief will take the form of a geographic split, an overlay area code, or a boundary realignment." 47 C.F.R. § 52.19(a); *see* Order ¶ 27 n. 88. NARUC does not explain how these proceedings have become more burdensome, much less how the Order has caused a more burdensome procedure for the state commissions to carry out their delegated duties. That objection overlooks that the Commission has preserved the numbering authority of state commissions. *See* Order ¶ 24. The Order requires I-VoIP service providers to "file requests for

numbers with the relevant state commission(s) at least 30 days before requesting numbers from the Numbering Administrators," *id.* ¶ 24, and I-VoIPs that directly access numbers are required to "adher[e] to the numbering authority delegated to state commissions for access to data and number reclamation," *id.* ¶ 27. Indeed, when NARUC's counsel was asked during oral argument to describe, in light of Paragraph 24, how the Order harmed NARUC, counsel appeared to deflect the question, responding that its members "were not happy" with the Order. Oral Arg. Tape 32:30–34:20. Unhappiness, however, does not meet the first prong of Article III standing. Because it is not self-evident that state commissions' procedures have become more burdensome for NARUC members, NARUC fails to demonstrate an injury-in-fact. Again, "[b]are allegations" are insufficient. *Sierra Club*, 292 F.3d at 898.

Accordingly, because NARUC has failed to demonstrate an injury-in-fact, and thus failed to establish Article III standing to challenge the Order, the court lacks jurisdiction and the petition for review is dismissed.