# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

**No. 21-1099**

**September Term, 2021**

FILED ON: JUNE 28, 2022

VINCENT LUCAS,
       PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION AND UNITED STATES OF AMERICA,
       RESPONDENTS

———

On Petition for Review of an Order
of the Federal Communications Commission

———

Before: WILKINS and KATSAS, *Circuit Judges*, and SILBERMAN, *Senior Circuit Judge*.

**J U D G M E N T**

This appeal was considered on the record from the Federal Communications Commission and on the briefs of the parties. *See* FED. R. APP. P. 34(a)(2); D.C. CIR. R. 34(j). The court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. CIR. R. 36(d). For the reasons set out below, it is

**ORDERED AND ADJUDGED** that the petition be denied.

**I.**

The Telephone Consumer Protection Act of 1991 ("TCPA"), Pub. L. No. 102-243, 105 Stat. 2394, prohibits automated and prerecorded calls, commonly known as robocalls, to residential telephone lines "without the prior express consent of the called party, unless the call is . . . exempted by rule or order by the Commission under [Section 227(b)(2)(B)]." 47 U.S.C. § 227(b)(1)(B). Under this provision, the Federal Communications Commission (the "Commission" or "FCC") is authorized to exempt two types of calls: (1) "calls that are not made for a commercial purpose" and (2) "such classes or categories of calls made for commercial purposes as the Commission determines . . . will not adversely affect the privacy rights that this section is intended to protect" and "do not include the transmission of any unsolicited advertisement." *Id.* § 227(b)(2)(B). This case concerns the Commission's rules for the latter exemption: commercial

1

non-telemarketing calls.

In 1992, pursuant to Section 227 of the TCPA, the Commission broadly exempted "prerecorded or artificial voice message calls to residences" that are "made for commercial purposes which do not transmit an unsolicited advertisement." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 7 FCC Rcd. 8752, 8755 ¶ 5 (1992) (codified as amended at 47 C.F.R. § 64.1200(a)(3)(iii)). It has also exempted two specific categories of commercial non-telemarketing calls that are relevant to this case: debt collection calls and broadcaster calls. First, in its 1992 order, the Commission exempted debt collection calls, based on its determination that they are "commercial calls which do not transmit an unsolicited advertisement." 7 FCC Rcd. at 8773 ¶ 39. Second, in 2003, the Commission exempted "prerecorded messages sent by radio stations or television broadcasters that encourage telephone subscribers" to tune into a free broadcast. *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14,014, 14,100 ¶ 145 (2003); *but see id.* at n.499 ("However, messages that encourage consumers to listen to or watch programming, including programming that is retransmitted broadcast programming for which consumers must pay (e.g., cable, digital satellite, etc.), would be considered advertisements for purposes of our rules.").

In 2019, Congress passed the Pallone-Thune Telephone Robocall Abuse Criminal Enforcement and Deterrence Act ("TRACED Act"), Pub. L. No. 116-105, 133 Stat. 3274 (2019), directing the Commission to ensure that any exemption the Commission previously established under Section 227(b)(2)(B) of the TCPA included certain requirements. Specifically, Section 8 of the TRACED Act requires that the Commission ensure every exemption "contains requirements for calls made in reliance on the exemption with respect to": (1) "the classes of parties that may make such calls"; (2) the classes of parties that may be called"; and (3) "the number of such calls that a calling party may make to a particular called party." 47 U.S.C. § 227(b)(2)(I).

On October 1, 2020, the Commission issued a Notice of Proposed Rulemaking "propos[ing] measures to implement section 8 of the TRACED Act and seek[ing] comment on how [the Commission] can best implement it." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 35 FCC Rcd. 11,186, 2020 WL 5905316, at *1 ¶ 2 (Oct. 1, 2020) (hereinafter "*2020 NPRM*"). As to the general exemption for commercial non-telemarketing calls, the Commission additionally sought comment on "whether the exemption remains in the public interest." *Id.* at *5 ¶ 14 & n.29 (citing 47 C.F.R. § 64.1200(a)(3)(iii)). In response, Petitioner Vincent Lucas submitted comments contending, *inter alia*, that the Commission should eliminate the general exemption for non-telemarketing calls and "replace it with specific, narrowly tailored exemptions." J.A. 62; *see generally id.* at 58–77 (Lucas comment and exhibits).

On December 30, 2020, the Commission issued an order retaining the exemption for commercial non-telemarketing calls and established specific requirements for this exemption as mandated by the TRACED Act. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 35 FCC Rcd. 15,188, 2020 WL 7873750, at *7 ¶¶ 25–29 (Dec. 30, 2020) (hereinafter "*2020 Order*"). Lucas timely filed a petition for judicial review on March 29, 2021, challenging the *2020 Order* as arbitrary and capricious. *See* Dkt. No. 1893426.

2

## II.

Under the Administrative Procedure Act's arbitrary-and-capricious standard, the agency's rules must "be reasonable and reasonably explained." *Nat'l Tel. Co-op. Ass'n v. FCC*, 563 F.3d 536, 540 (D.C. Cir. 2009). Because "arbitrary-and-capricious review in agency rulemaking cases is highly deferential," our review of such rules "is narrow." *Id.* at 541 (internal quotation marks and citations omitted). As such, a reviewing court "may not substitute its judgment for that of the agency, but must instead evaluate whether the agency's decision considered relevant factors and whether it reflects a clear error of judgment." *NTCH, Inc. v. FCC*, 841 F.3d 497, 502 (D.C. Cir. 2016) (internal quotation marks and citation omitted). In his petition, Lucas makes two main arguments. First, Lucas argues that the Commission acted arbitrarily and capriciously by retaining the exemption for commercial non-telemarking calls and establishing specific requirements under the TRACED Act. Second, Lucas contends that certain debt collection calls and broadcaster calls should not remain exempt as commercial non-telemarketing calls. Both arguments fail.

Turning to Lucas's first argument, Lucas contends that the Commission "should eliminate the [general] exemption" for commercial non-telemarketing calls and "replace it with specific, narrowly tailored exemptions." J.A. 58. Specifically, Lucas argues that the exemption is too broad, allows for certain subcategories of calls that are advertisements, and adversely affects privacy rights that the TCPA intended to protect. Lucas also contends that the Commission acted arbitrarily and capriciously in applying the same numerical limits to all subcategories of calls that are exempted as commercial non-telemarketing calls. These arguments are without merit. The Commission's decision to retain the exemption and establish limits on such calls in accordance with the TRACED Act was reasonable and supported by the record. In its order, the Commission found that commercial non-telemarketing calls should remain exempt because they "benefit[] consumers by enabling businesses to communicate with their customers on important matters such as prescription refill reminders, power outage updates, and data security breaches." *2020 Order* at *7 ¶ 25. Indeed, as noted by the FCC, Lucas was the only commenter advocating for the wholesale elimination of the exemption. While the remaining commenters argued for (or against) certain limits related to the exemption, they nevertheless contended that the exemption generally remained in the public interest. *See, e.g.*, J.A. 134 (comment by FedEx stating that "the Commission should keep intact the longstanding exemption for non-marketing calls to residential landlines" because it "helps convey important informational messages, including package delivery notifications"); *id.* at 130 (comment by Encore Capital Group, a debt purchasing and debt collection entity, stating that "[i]nformational calls from debt collectors . . . are critical to . . . millions of U.S. consumers"); *id.* at 125 (comment by Edison Electric Institute advocating for the retention of the exemption); *id.* at 110 (comment by Credit Union National Association advocating for the exemption). In its order, the Commission acknowledged Lucas's views, *see 2020 Order* at *7 ¶ 25 n.71, ¶ 26 n.73, but nevertheless agreed with the majority of commenters that the exemption remained in the public interest. The retention of this exemption is all the more reasonable given the Commission's implementation of new limits on the number of exempted calls permitted (three per 30-day period) and an opt-out mechanism that allows consumers to prohibit unwanted calls. *Id.* at *7–8 ¶¶ 28–29. Therefore, the Commission did not act arbitrarily and

3

capriciously by retaining the exemption for commercial non-telemarketing calls.

Nor did the Commission act arbitrarily and capriciously by implementing the same numerical limits for all subcategories of calls within the commercial non-telemarketing calls exemption. The Commission found that these limits "strike the appropriate balance between these callers reaching consumers with information and reducing the number of unexpected and unwanted calls consumers currently receive." *2020 Order*, at *4 ¶ 15. Lucas contends that different numerical limits should be applied to different types of calls. Yet as the Commission noted in its Order, "[c]ommenters"—including Lucas—"did not submit any specific cost or benefit data on potential call limits" demonstrating that different limits are necessary for any subcategory of commercial non-telemarketing calls. *Id.* at *5 ¶ 19. Moreover, as an additional safeguard, the opt-out mechanism "give[s] consumers more say in how many calls they receive." *Id.* at *6 ¶ 23. Finally, the Commission intends "to monitor these limits to determine whether they may require adjustment in light of [its] experience." *Id.* at *4 ¶ 15. As such, the implementation of the same numerical limits for all subcategories of commercial non-telemarketing calls was reasonable.

Second, Lucas contends that certain debt collection calls and calls from broadcasters should not be exempt as commercial non-telemarketing calls. In relevant part, Lucas contends that the Commission should not continue to exempt debt collection calls made to a non-debtor or a debtor that has disputed the debt because they are particularly intrusive and affect the privacy rights that the TCPA intended to protect. Lucas also argues that the Commission should not continue to exempt calls from broadcasters that invite a consumer to tune into a free broadcast because such calls are advertisements. Moreover, Lucas alleges that the rationale underlying the exemption for such broadcaster calls could "apply to any business that provides its goods or services free of monetary cost to consumers," such as internet search engines and social media companies. Pet'r's Br. at 17–18 (emphasis omitted). As such, in Lucas's view, the exemption for broadcaster calls is overbroad and could effectively be used by any caller promoting free goods and services.

In response, the FCC contends that Lucas's arguments—which implicate the review of FCC rulings adopted in 1992 and 2003 exempting debt collection calls and broadcaster calls—are time-barred and should be dismissed. We agree. In order for this Court to exercise jurisdiction, a party challenging a final agency order must file a petition for judicial review within 60 days after publication of the order. *See* 28 U.S.C. § 2344. Thus, Lucas's challenge can only proceed under the "reopening doctrine," which "allows an otherwise stale challenge to proceed" if "'the agency opened the issue up anew,' and then 'reexamined . . . and reaffirmed its [prior] decision.'" *P & V Enters. v. U.S. Army Corps of Eng'rs*, 516 F.3d 1021, 1023 (D.C. Cir. 2008) (quoting *Pub. Citizen v. Nuclear Regul. Comm'n*, 901 F.2d 147, 150–51 (D.C. Cir. 1990) (alterations in original)). "The doctrine only applies, however, where the entire context demonstrates that the agency has undertaken a serious, substantive reconsideration of the existing rule." *Id.* at 1024 (cleaned up).

Such context is not present here. Although the Commission did seek comment on "whether the exemption [for commercial non-telemarketing calls] remain[ed] in the public interest," *2020 NPRM* at *5 ¶ 14, it is clear from the entire context of the *2020 NPRM* that the Commission was

soliciting comments about the continued need for the exemption *generally*, not whether certain subcategories of calls within the exemption should remain classified as commercial non-telemarketing calls. The *2020 NPRM* made clear that the Commission was focused on implementing the requirements mandated by the TRACED Act. *Id.* at *1 ¶ 2. Neither the TRACED Act nor the *2020 NPRM* mentions debt collection calls or broadcaster calls. As the Commission explained in the *2020 Order*:

> [S]ection 8 of the TRACED Act requires only that we ensure that any exemption adopted pursuant to sections 227(b)(2)(B) or (C) includes requirements with respect to: (1) the classes of parties that may make such calls; (2) the classes of parties that may be called; and (3) the number of such calls that may be made to a particular called party. *Our review of the TCPA exemptions, therefore, is limited to these specific requirements.*

*2020 Order* at *13 ¶ 49 (emphasis added). Notably, the Commission specifically rejected consideration of comments that "request[ed] amendments to various TCPA exemptions" because such comments "exceed[ed] the scope of the requirements the TRACED Act imposes." *Id.*; *see also id.* at n.123 (citing comments). As such, there is no indication in the record that the Commission had "undertaken a serious, substantive reconsideration" of whether debt collection calls and broadcaster calls should remain exempt as commercial non-telemarketing calls. *P & V Enters.*, 516 F.3d at 1024 (cleaned up). Accordingly, Lucas's arguments with respect to these subcategories of calls are time-barred and therefore dismissed. The petition is denied.

\*\*\*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*. *See* FED. R. APP. P. 41(b); D.C. CIR. R. 41.

**Per Curiam**

FOR THE COURT:
Mark J. Langer, Clerk

BY:  /s/
Michael C. McGrail
Deputy Clerk

5